**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**CIVIL ACTION NO. ________________**

---

**UNITE 4 FREEDOM, INC.,**
**GREGORY STENSTROM, PRO SE, and**
**HARRY HAURY, PRO SE,**

*Plaintiffs,*

v.

**AL SCHMIDT, in his official capacity as**
**Secretary of the Commonwealth of Pennsylvania,**
*Defendant.*

---

# VERIFIED COMPLAINT UNDER THE NATIONAL VOTER REGISTRATION ACT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

Plaintiffs Unite 4 Freedom, Inc. (U4F), Gregory Stenstrom, and Harry Haury bring this original, standalone action solely under the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. §§ 20507 and 20510. The attached evidentiary record is incorporated throughout: the August 18, 2026 statutory Notice and appendices (Ex. A, compiled PDF pp. 1-24); Pennsylvania's September 10 response (Ex. B, pp. 25-29); the Pennsylvania Vote Tampering Report and Election Validity Scorecard (Exs. C-D, pp. 30-33); authenticated summaries of the complete native Section 1 and Section 2 CSVs (Exs. E-F, pp. 34-43); a request-and-response index (Ex. G, pp. 44-46); and selected portions of

Pennsylvania's official 2025 voter-registration report (Ex. H, pp. 47-65). Plaintiffs' analysis identified 2,865,011 flagged record-level conditions across 2,555,665 unique registration identifiers requiring explanation, reconciliation, or examination of Pennsylvania's implementation records. A companion analysis identified 1,668,861 flagged conditions across 1,527,639 unique identifiers associated with records reflecting a vote in the 2024 General Election. Defendant's counsel confirmed receipt and review of the Notice and flash drive, addressed several exact categories, and acknowledged more than 1.5 million implicated records, but Pennsylvania produced no responsive record and offered no inspection. Ex. B, pp. 26-29; Ex. G, pp. 44-46.

Plaintiffs now invoke the civil-enforcement remedy Congress provided. They seek a temporary order preserving specifically identified existing records and setting an expedited adversarial schedule, followed by a preliminary injunction requiring inspection of a defined first tranche. They do not seek postponement of the election, alteration of election rules or deadlines, removal of any voter, or preliminary adjudication of every record-level condition described in the statutory notice.

---

## I. Nature of the Action

1. Since 2020, U4F and Stenstrom have repeatedly requested from Pennsylvania election officials records and documentation concerning voter-registration administration, voter-list maintenance, record-level changes, audit and transaction histories, governing procedures, and the information necessary to explain conditions appearing in official Pennsylvania election records. They have analyzed successive

official statewide datasets, published election-validity Scorecards and Vote Tampering Reports, supplied record-level machine-readable results, communicated findings to responsible officials, and sought investigation, reconciliation, and correction.

2. On August 18, 2026, U4F, together with Stenstrom and Haury as identified aggrieved persons, delivered written notice to Pennsylvania's chief State election official under 52 U.S.C. § 20510(b). Ex. A, pp. 1-14. The Notice formalized and particularized Plaintiffs' longstanding requests, identified the asserted violations, described the official Pennsylvania datasets analyzed by U4F, identified recurring record categories and existing implementation records sought for inspection, demanded preservation and corrective action, and incorporated the Scorecard, Vote Tampering Report, and machine-readable supporting data. Ex. A, pp. 2-13, 15-24.

3. Defendant acknowledges receiving the Notice and accompanying electronic materials on August 21, 2026. On September 10, the Department of State, through Assistant Counsel Michelle Rupp, stated that she had reviewed the Notice and included flash drive. Ex. B, p. 26. The response referred to more than 1.5 million voter-registration records and addressed the exact subjects of post-cutoff processing, legacy-system migration, default dates, protected-record placeholders, addresses, confirmation notices, and cancellations. Ex. B, pp. 27-29. The response establishes actual notice, substantive review, comprehension of the systems and categories at issue, and the Department's ability to identify the implicated programs and practices.

4. Yet Defendant produced no record, offered no inspection, identified no custodian, and proposed no production schedule. Ex. B, pp. 26-29; Ex.

G, pp. 44-46. Defendant instead asserted that the request was insufficiently specific and invited another request. Ex. B, p. 28. Plaintiffs were not required to restart the statutory process after Defendant had received, reviewed, and substantively answered the Notice while withholding every responsive record. The public-inspection violation therefore continues.

5. The same response stated that Pennsylvania counties had sent approximately 437,599 list-maintenance notices and had cancelled approximately 338,295 registrations. Ex. B, pp. 28-29. Pennsylvania's own annual report describes the statewide and county list-maintenance programs, notices, responses, status changes, cancellations, and county-level records generated by those programs. Ex. H, pp. 51-65. Those admissions and official materials confirm active list-maintenance programs and the existence of responsive implementation records, including records expressly identified in § 20507(i)(2): lists of persons sent confirmation notices and information concerning whether they responded.

6. Because the continuing violation occurred within 120 days before the November 3, 2026 federal election, § 20510(b)(2) authorized suit when it remained uncorrected twenty days after receipt. This Complaint is that enforcement action. It is not a new statutory notice, does not withdraw or supersede the August 18 notice, does not restart the statutory period, and does not afford Defendant another opportunity to postpone enforcement by requesting further particularization.

## II. Jurisdiction and Venue

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the National Voter Registration Act, 52 U.S.C. §§ 20501–20511.

8. Section 20510(b) authorizes an aggrieved person to commence a civil action for declaratory or injunctive relief after written notice and noncorrection within the applicable statutory period.

9. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. Preliminary and permanent injunctive relief is authorized by 52 U.S.C. § 20510(b) and Federal Rule of Civil Procedure 65.

10. Defendant is sued only in his official capacity for prospective relief ending continuing violations of federal law.[1]

11. Venue is proper under 28 U.S.C. § 1391(b)(2). Stenstrom resides in Delaware County; he sent and pursued the inspection demands from this District; Defendant communicated the refusal to him here; and Defendant's continuing nonproduction impairs his established Pennsylvania publication, official-contact, record-review, and corrective activities here. If the Court concludes that venue is improper or that another federal district is more appropriate, Plaintiffs request transfer under 28 U.S.C. § 1406(a) or § 1404(a), as applicable, rather than dismissal.

---

[1] Ex parte Young, 209 U.S. 123, 159–60 (1908) (authorizing prospective relief against a state officer to end an ongoing violation of federal law).

## III. Parties

12. Plaintiff Unite 4 Freedom, Inc. is a national nonprofit election-integrity organization founded and led by Plaintiff Harry Haury, its Chair and President. U4F analyzes official voter-registration and voter-history records, conducts public-record inspection, publishes state-specific election-validity Scorecards and Vote Tampering Reports, maintains supporting machine-readable datasets, presents record-specific findings to election officials, and seeks investigation and correction. U4F has conducted this work nationally, including statutory NVRA notice activity in approximately thirty-five States. In Pennsylvania, U4F provided the August 18 notice and supplied its Pennsylvania Scorecard, Tamper Report, appendices, and supporting machine-readable datasets.

13. Plaintiff Gregory Stenstrom is an adult United States citizen, a resident of Delaware County, a registered Pennsylvania voter, a personal requester, and a participant with personal knowledge of U4F's Pennsylvania record-review, publication, official-contact, and corrective work. Since 2020, he has requested election records, analyzed official Pennsylvania data, communicated findings to election officials, and sought investigation and correction. He personally joined the August 18 notice and requested inspection.

14. Plaintiff Harry Haury is an adult United States citizen, a Missouri resident, and the founder, Chair, and President of U4F's national organization. He directs U4F's multistate election-data analysis, publication, record-inspection, statutory-notice, and official-communication work. He personally joined and submitted the August 18 notice, signed for U4F and himself, and received Defendant's September 10 response.

15. Defendant Al Schmidt is the Secretary of the Commonwealth of Pennsylvania and Pennsylvania's chief State election official responsible for coordinating State responsibilities under the NVRA. He is sued only in his official capacity.

---

## IV. Standing and Immediate Injury

16. U4F was itself a requester. Under Haury's leadership and long before this action, it maintained an established Pennsylvania program of analyzing official registration and voter-history data, publishing Pennsylvania Scorecards and Tamper Reports, maintaining supporting machine-readable datasets, presenting findings to responsible officials, and seeking investigation and correction. Those activities preceded Defendant's refusal and were not undertaken to manufacture standing for litigation.

17. U4F has already published its Pennsylvania findings and contacted election officials. It is continuing that established work before November 3 by testing Defendant's September 10 explanations, completing and updating pending Pennsylvania analyses, publishing supported record-specific findings, presenting those findings to State and county officials, and assisting affected voters where lawful and practicable. U4F cannot responsibly complete those activities without the implementation records necessary to distinguish administrative explanations from unresolved conditions.

18. Defendant's complete nonproduction directly impairs those preexisting and continuing activities. U4F cannot reliably determine how official records were defined, converted, noticed, changed, cancelled, restored, or disposed without the requested data

definitions, governing procedures, confirmation-notice records, reason-code tables, and transaction or change histories. Inspection after November 3 cannot restore the lost opportunity to complete and use that work during the present pre-election period.

19. Independently, Stenstrom is a Pennsylvania voter and personal requester who has reviewed Pennsylvania election records, published or participated in publishing findings, contacted responsible officials, and sought investigation and correction since 2020. Before November 3, he will continue comparing the requested implementation records with official Pennsylvania data already analyzed, presenting supported findings to State and county officials, notifying affected voters where lawful and practicable, and seeking timely administrative correction of verified errors affecting eligible voters.

20. Defendant's refusal is the direct barrier to Stenstrom's identified continuing activities. The requested materials include definitions, governing procedures, confirmation-notice and disposition records, and transaction and change histories necessary to test Defendant's explanations. Appendix B compares successive official snapshots and documents changes between them. Ex. A, pp. 20-24; Ex. C, pp. 30-31. Defendant also stated that many implicated records had likely been updated since the January 13, 2025 source file. Ex. B, p. 28. Pennsylvania's live system continues processing additions, status changes, corrections, exceptions, and election-related transactions. Without preservation of the underlying histories, logs, extracts, snapshots, and disposition records, later production of a then-current database will not necessarily permit reconstruction of the records and processes existing when notice was served.

21. U4F's and Stenstrom's injuries are concrete and imminent, traceable to Defendant's refusal, and redressable by preservation and inspection orders. The requested relief supplies the records required for their identified activities; it does not merely reimburse investigation or litigation expenses.

22. The Third Circuit's Pennsylvania PILF decision dismissed for lack of standing and did not decide the substantive scope of § 20507(i). Public Interest Legal Foundation v. Secretary Commonwealth of Pennsylvania, 136 F.4th 456, 465-67 (3d Cir. 2025). Unlike the out-of-state requester on the summary-judgment record there, U4F and Stenstrom plead specific Pennsylvania ties, preexisting activities, concrete plans to use the requested records before November 3, and impairment of participation- and correction-related work. Stenstrom is an in-state registered voter, a personal requester, and an identified pre-election user of the information. U4F submitted the Notice and data and conducts its Pennsylvania work through Haury and Stenstrom.

23. U4F and Stenstrom each allege an independent basis for standing. Either Plaintiff's standing is sufficient to support the common relief requested by all Plaintiffs.2

---

2Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 52 n.2 (2006) (holding that one plaintiff's standing is sufficient when all plaintiffs seek the same relief).

## V. Statutory Duties and Factual Allegations

### A. Public Inspection

24. Section 20507(i) requires Pennsylvania to maintain for at least two years and make available for public inspection all non-exempt records concerning implementation of programs and activities conducted to ensure the accuracy and currency of official lists of eligible voters.[3]

25. The statute expressly includes records concerning persons sent confirmation notices and whether they responded.

26. Persuasive circuit authority holds that § 20507(i) reaches completed voter-registration applications and electronic statewide voter files reflecting additions and changes made through voter-list registration and maintenance activity. Project Vote/Voting for America, Inc. v. Long, 682 F.3d 331, 335-36 (4th Cir. 2012); Public Interest Legal Foundation, Inc. v. Bellows, 92 F.4th 36, 46-48 (1st Cir. 2024). These authorities are persuasive rather than controlling in this Circuit.

27. The defined first tranche concerns implementation on its face and narrows records demanded in the August 18 notice. Written procedures, data dictionaries, and code or reason-code tables identify how official fields and dispositions operate; conversion, migration, default-value, and placeholder specifications govern the processes Defendant invoked in response; confirmation-notice lists, responses, and dispositions are expressly covered by § 20507(i)(2); and transaction or change histories document how noticed registrations were changed, cancelled, restored, merged, or otherwise resolved.

---

[3] 52 U.S.C. § 20507(i)(1)–(2) (requiring maintenance and public inspection of covered list-maintenance records and expressly including confirmation-notice records).

28. The notice-to-record chain is direct. The Notice requested written procedures and implementation records; records documenting additions, changes, removals, and corrections; records identifying authority and responsible offices; confirmation-notice records; database transaction logs; change-history tables; import and export logs; system-event records; and a category-by-category disposition. Ex. A, pp. 7-12. Defendant responded by discussing migration, default dates, protected placeholders, confirmation notices, cancellations, and processing after the registration cutoff. Ex. B, pp. 27-29. Exhibit G maps each requested category to Defendant's stated response and shows that no record was identified as produced or offered for inspection. Ex. G, pp. 44-46. A categorical explanation is not the inspection Congress required, and the litigation schedule particularizes and narrows the same requested records rather than presenting a new violation.

---

## B. Reasonable and Uniform List Maintenance

29. Section 20507(a)(4) requires a general program making a reasonable effort to remove registrants who have become ineligible because of death or change of residence.4

30. The August 18 Notice identified record-level categories bearing on Pennsylvania's list-maintenance and registration programs. The incorporated Scorecard and complete machine-readable Section 1 dataset contain 2,865,011 flagged category instances across

4American Civil Rights Union v. Philadelphia City Commissioners, 872 F.3d 175, 182 (3d Cir. 2017) (holding that § 20507(a)(4)'s mandatory language concerns ineligibility caused by death or change of residence).

2,555,665 unique registration identifiers. Ex. A, pp. 15-19; Ex. D, pp. 32-33; Ex. E, pp. 34-38. The six rows displayed in the Appendix A summary table total 2,704,791. Ex. A, p. 17. Exhibit E supplies the complete eleven-category breakdown and the five additional categories omitted from that displayed table: 68,810 backdated-registration instances, 46,443 invalid or illogical vote-history instances, 35,431 duplicate-registration instances, 9,442 questionable-inactive-status instances, and 94 instances categorized as voting while inactive. Ex. E, pp. 35-36. Those five categories total 160,220; added to the six displayed rows, they reconcile exactly to the stated Section 1 total of 2,865,011.

31. The complete machine-readable Section 2 analysis contains 1,668,861 flagged category instances across 1,527,639 unique identifiers associated with records reflecting a vote in the 2024 General Election. Ex. A, pp. 17-18; Ex. D, p. 33; Ex. F, pp. 39-43. Plaintiffs do not add the Section 1 and Section 2 totals or allege 4,533,872 separate records; the analyses contain overlapping identifiers and address related but differently defined populations. Exhibits E and F identify the native files by exact filename, byte size, row count, and SHA-256 hash, explain the nine-field record structure, provide complete category, subcategory, and county totals, and identify the public electronic location from which byte-for-byte identical native copies may be obtained. Ex. E, pp. 35-38; Ex. F, pp. 40-43. Plaintiffs will furnish the native files by electronic media, secure transfer, or another method directed by the Court.

32. The counts stated above are direct results of Plaintiffs' analysis of Pennsylvania's official data, not speculation. The native Section 1 file contains 2,865,011 data rows and 2,555,665 unique registration

identifiers; its SHA-256 hash is ea615a430e017bb5a3dc563c06aa63249a615837b8686152627180c13c4fdbd7. Ex. E, p. 35. The native Section 2 file contains 1,668,861 data rows and 1,527,639 unique registration identifiers; its SHA-256 hash is dde6753eda6988c65a1a0ae3884d947fbf4e06c16ae21e7dbd0ad649bcdf6a11. Ex. F, p. 40. Plaintiffs do not allege that every flagged condition conclusively establishes ineligibility, an unlawful vote, or an NVRA violation. The Scorecard's advocacy labels do not replace adjudication. Plaintiffs allege that the observed record-level conditions remain unexplained or unreconciled at the individual-record level and that Defendant has withheld the procedures, definitions, histories, notices, and dispositions needed to determine whether the conditions reflect lawful administration, clerical or migration effects, unresolved errors, or violations of federal duties.

33. Defendant supplied categorical explanations for selected conditions, including post-cutoff processing, legacy-system conversion, default dates, and protected-record placeholders, but produced no governing procedure, data definition, reason-code table, confirmation-notice record, transaction history, or category-specific disposition with which any explanation could be tested against the identified records. Ex. B, pp. 27-29; Ex. G, pp. 44-46. Pennsylvania's annual report confirms that county and statewide programs generated notice, response, status, cancellation, and other implementation records. Ex. H, pp. 51-65.

34. The noticed conditions recur across Pennsylvania jurisdictions within a statewide system, yet Defendant disclosed no statewide definitions, reason codes, disposition rules, or county-level treatment

by which materially similar records can be compared. Plaintiffs allege upon information and belief that materially similar records may have received materially different classifications or dispositions across jurisdictions. The requested records are necessary to identify and adjudicate that treatment; Plaintiffs do not allege racial discrimination or seek relief under the Voting Rights Act in this action.

---

**C. The Ninety Day Provision**

35. Plaintiffs do not request a systematic removal program during the ninety-day period protected by § 20507(c)(2)(A).

36. At the preliminary stage, Plaintiffs request preservation, inspection, and a verified category-by-category reconciliation and corrective-status report. That report must identify what Defendant reviewed, the governing definitions and procedures, the disposition or present status of each noticed category, the records supporting each disposition, the number of identifiers that remain unresolved, and the timetable for lawful individualized investigation and correction. Plaintiffs do not ask the Court to treat every flagged instance as an ineligible registration or unlawful vote. Their merits claims seek lawful, individualized correction after the governing records are produced and the facts are adjudicated—not mass cancellation, a purge, or removal without statutory notice and process.

37. A verified reconciliation does not require systematic removal during the ninety-day period. It requires Defendant to place on the judicial record what was examined, what was determined, what remains unresolved, and what lawful safeguards and corrective process

govern those records. This distinction protects eligible voters, leaves election rules and deadlines unchanged, and permits the Court to decide the corrective claims on a developed record rather than categorical assurances.

---

## VI. Statutory Notice and Noncorrection

38. The August 18 notice was not Plaintiffs' first effort to obtain Pennsylvania election-administration records. It formalized and particularized under §§ 20507(i) and 20510(b) Plaintiffs' continuing requests since 2020 for records necessary to examine voter-registration administration, list-maintenance activity, record-level changes, and the implementation of Pennsylvania's official systems. It expressly identified U4F as a notifying requester together with the individual aggrieved persons and identified the statutory duties, claimed violations, datasets, record-level categories, requested implementation records, preservation demand, and corrective action demanded.

39. Defendant received the Notice and accompanying electronic materials on August 21. Its September 10 response admits receipt and states that counsel reviewed both the Notice and included flash drive. Ex. B, p. 26. The response referred to more than 1.5 million records and addressed exact data categories, processing rules, migration practices, default values, protected placeholders, addresses, notices, and cancellations. Ex. B, pp. 27-29. That category-specific response demonstrates that the Notice and electronic files enabled Defendant to identify the disputed subjects and investigate them.

40. Twenty days elapsed without inspection, production, identification of a custodian, or a schedule. Ex. B, pp. 26-29; Ex. G, pp. 44-46. Defendant's invitation that Plaintiffs submit another request did not produce, preserve, or make available any record and did not extend or restart Congress's statutory period.

41. The notice therefore performed its statutory function: it afforded Defendant actual notice and an opportunity to investigate and correct. Defendant investigated sufficiently to formulate system-specific explanations and deny the asserted violations, but it did not correct the inspection violation. Plaintiffs were not required to continue an administrative debate after the statutory period expired.

42. Plaintiffs have not issued a second statutory notice. The record schedule and proposed orders filed with this Complaint particularize and narrow the same existing implementation records demanded in the August 18 notice. They do not create a new violation, waive the completed statutory period, or afford Defendant an additional cure period.

43. All conditions precedent to this action under § 20510(b)(2) have occurred or been satisfied.

---

## VII. Claims for Relief

### Count I Violation of the Public Inspection Provision

44. Plaintiffs incorporate paragraphs 1 through 43 and Exhibits A through H. U4F and the individual Plaintiffs requested existing implementation records after years of related Pennsylvania record requests and corrective activity. Their Notice supplied record-level machine-readable results comprising 2,865,011 flagged instances

across 2,555,665 unique registration identifiers and a companion vote-associated analysis comprising 1,668,861 instances across 1,527,639 unique identifiers. Ex. A, pp. 1-24; Exs. E-F, pp. 34-43. Defendant received the formal Notice, reviewed the supporting electronic materials, understood and answered the identified categories, and made no responsive record available for inspection. Ex. B, pp. 25-29; Ex. G, pp. 44-46.

45. The requested existing records concern implementation of Pennsylvania programs and activities conducted to ensure the accuracy and currency of official voter lists. The first tranche is limited to written procedures; data dictionaries and code or reason-code tables; migration, default-value, and placeholder specifications; confirmation-notice lists, responses, and dispositions; and existing change, transaction, exception, and disposition records for the noticed categories, subject to lawful redactions and reasonable security measures. These categories track the Notice, Defendant's response, and Pennsylvania's own description of the records generated by its programs. Ex. A, pp. 7-12; Ex. B, pp. 27-29; Ex. G, pp. 44-46; Ex. H, pp. 51-65.

46. Defendant has not made the requested non-exempt records available for meaningful public inspection.

47. The violation continues and directly causes the informational and downstream injuries alleged above.

48. Plaintiffs are entitled to declaratory and injunctive relief under § 20510(b).

---

**Count II Failure to Conduct a Reasonable List Maintenance Program**

49. Plaintiffs incorporate paragraphs 1 through 48.

50. Section 20507(a)(4) imposes a continuing duty to conduct a general program making a reasonable effort regarding ineligibility caused by death or change of residence.

51. The Notice identified recurring record-level categories bearing on Pennsylvania's list-maintenance programs, including duplicate or conflicting registrations and addresses, questionable inactive status, confirmation-notice activity, cancellations, changes, corrections, and dispositions. Ex. A, pp. 4-12, 15-24. The incorporated CSVs identify each flagged record by category, subcategory, registration identifier, name fields, status, and county, permitting investigation rather than presenting an undifferentiated accusation. Ex. E, pp. 35-38; Ex. F, pp. 40-43.

52. Defendant admits extensive confirmation-notice and cancellation activity, Ex. B, pp. 28-29, and Pennsylvania's official annual report describes the corresponding statewide and county programs and records, Ex. H, pp. 51-65. Defendant nevertheless has withheld the governing procedures, reason-code definitions, notice and response records, transaction histories, and category-specific dispositions necessary to determine whether the noticed death- and change-of-residence categories were handled through a reasonable general program.

53. Plaintiffs seek an immediate verified reconciliation and corrective-status report, followed by adjudication and lawful individualized correction on a developed record, subject to § 20507(c)(2)(A) and all

required voter protections. The requested status report does not itself remove, cancel, or impair any registration.

54. Plaintiffs are entitled to declaratory and appropriate injunctive relief under § 20510(b).

---

**Count III Nonuniform List Maintenance**

55. Plaintiffs incorporate paragraphs 1 through 54.

56. Section 20507(b)(1) requires list-maintenance programs and activities to be uniform and nondiscriminatory and in compliance with the Voting Rights Act.

57. The Notice and incorporated data identify recurring record categories across jurisdictions operating within Pennsylvania's statewide system. Ex. A, pp. 4-12, 15-24; Exs. E-F, pp. 34-43. Defendant has not disclosed the statewide definitions, procedures, reason codes, county instructions, or disposition rules used for those categories. Ex. G, pp. 44-46.

58. Plaintiffs allege upon information and belief that materially similar records may have received materially different classifications or dispositions across jurisdictions. That allegation is supported by the recurrence of identified conditions throughout a statewide system, the county distributions in Exhibits E and F, Pennsylvania's own account of county-administered programs in Exhibit H, and Defendant's refusal to disclose common standards or category-specific dispositions. Ex. E, p. 37; Ex. F, p. 42; Ex. G, pp. 44-46; Ex. H, pp. 51-65. Plaintiffs seek the implementation records necessary to test and particularize that claim.

59. Plaintiffs seek uniform procedures and lawful dispositions, not preferential treatment or removal of any voter without statutory process.

60. Plaintiffs are entitled to declaratory and appropriate injunctive relief under § 20510(b).

---

**Count IV Declaratory Relief**

61. Plaintiffs incorporate paragraphs 1 through 60.

62. An actual controversy exists concerning Defendant's duties to preserve and permit inspection of the requested implementation records, provide a verifiable account of the noticed categories and their dispositions, and, after development of the record, conduct reasonable and uniform list maintenance.

63. Defendant disputes or has failed to perform those asserted duties. The controversy is present, concrete, and capable of judicial resolution.

64. A declaration will determine the parties' legal relations and support necessary further relief under 28 U.S.C. §§ 2201 and 2202.

---

## VIII. Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Declare that Defendant violated 52 U.S.C. § 20507(i) by failing to make the requested non-exempt implementation records available for public inspection;

B. Declare that the August 18 notice satisfied § 20510(b) and that the applicable twenty-day period expired without correction;

C. Declare, after adjudication on a developed record, the duties imposed by §§ 20507(a)(4) and (b) as applied to the noticed death- and change-of-residence categories;

D. Temporarily restrain destruction, deletion, overwriting, alteration, rotation, or expiration of the specific existing responsive record categories enumerated in the proposed temporary restraining order, without interrupting lawful voter-registration activity, and set an expedited response and hearing schedule;

E. Preliminarily require rolling electronic production or supervised inspection of the first-tranche records tied to Exhibits A, B, G, and H: written procedures; data dictionaries and code or reason-code tables; migration, default-value, and placeholder specifications; confirmation-notice lists, responses, and dispositions; and existing change, transaction, exception, and disposition records for the noticed categories, subject to reasonable security measures and lawful redactions;

F. Preliminarily require Defendant to file a verified category-by-category reconciliation and corrective-status report stating: (1) the governing definitions, procedures, and reason codes; (2) the number of unique registration identifiers reviewed; (3) the number determined to be lawful, erroneous, corrected, unresolved, or attributable to an identified conversion, migration, placeholder, privacy, clerical, duplicate, merge, death, change-of-residence, or other condition; (4) the factual and technical basis and supporting record categories for each disposition; (5) the responsible custodian; (6) the number for which Defendant cannot presently identify an explanation or disposition; (7) the timetable and procedure for lawful individualized investigation and correction of verified errors;

and (8) the safeguards governing treatment of unresolved records in the November 3, 2026 federal election; and further state whether each requested record is produced, available for inspection, withheld with the legal basis identified, not maintained, maintained by another identified custodian, or no longer available with the applicable retention rule and disposition date identified;

G. After adjudication on the merits, require Defendant to determine and document the disposition of the noticed death- and change-of-residence categories under uniform statewide procedures;

H. After adjudication on the merits, require lawful individualized correction of verified clerical, conversion, migration, or system errors, with all notices, waiting periods, and protections required by federal law;

I. Enjoin reliance on a judicially established erroneous registration-record classification to impair an eligible voter's registration or ballot, except through lawful individualized procedures;

J. Order expedited briefing, hearing, and decision sufficiently before November 3, 2026 to preserve meaningful relief and appellate review;

K. Award Plaintiffs their taxable costs and, to the extent incurred through counsel, reasonable attorney's fees and expenses as authorized by 52 U.S.C. § 20510(c); and

L. Grant such other and further relief as the Court deems just and proper.

**Respectfully submitted,**



**Gregory Stenstrom, Pro Se**
1541 Farmers Lane
Glen Mills, PA 19342
856-264-5495
gregorystenstrom@gmail.com
September 28, 2026



**Harry R Haury, Pro Se**
167 LAMP & LANTERN VILLAGE,
Suite 194
CHESTERFIELD, MO 63017
314-498-2569
harryhaury@protonmail.com

**/s/ Renee Mazer**
Renee Mazer
PA Bar No. 57666
191 Presidential Boulevard, Apt. 419
Bala Cynwyd, PA 19004
(484) 716-9619
reneemazer@gmail.com
Counsel for Plaintiff Unite 4 Freedom, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**CIVIL ACTION NO. ________________**

---

**UNITE 4 FREEDOM, INC.,**
**GREGORY STENSTROM, PRO SE, and**
**HARRY HAURY, PRO SE,**

*Plaintiffs,*

v.

**AL SCHMIDT, in his official capacity as**
**Secretary of the Commonwealth of Pennsylvania,**
*Defendant.*

---

## VERIFICATION OF GREGORY STENSTROM

---

I, Gregory Stenstrom, verify that I am a Plaintiff in this action; that I have read the foregoing Verified Complaint; and that I have personal knowledge of the record-request, publication, official-contact, analytical, and corrective activities attributed to me and of the U4F activities in which I participated. Since 2020, I have participated in requesting Pennsylvania election records, analyzing official voter-registration and voter-history data, publishing or assisting with State-specific reports, communicating findings to election officials, and seeking investigation and correction. I participated personally in preparing and submitting the August 18, 2026 notice and supporting materials. The factual statements concerning my actions, intentions, communications, the U4F

activities in which I participated, and matters within my personal knowledge are true and correct. As to matters stated upon information and belief, I believe them to be true based upon the official records, statutory notice, incorporated analyses, correspondence, and data identified in the Complaint.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on September 28, 2026, in Glen Mills, Pennsylvania.

Gregory Stenstrom

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Unite 4 Freedom, Inc.; Gregory Stenstrom; Harry R. Haury

**(b)** County of Residence of First Listed Plaintiff: St. Louis County, MO
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Renee Mazer, Esq., 191 Presidential Blvd., Apt. 419, Bala Cynwyd, PA 19004; (484) 716-9619. Stenstrom and Haury, pro se.

## DEFENDANTS

Al Schmidt, Secretary of the Commonwealth of Pennsylvania (official capacity)

County of Residence of First Listed Defendant: Dauphin County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Michelle Rupp, Assistant Counsel, PA Department of State, 306 North Office Building, Harrisburg, PA 17120-0102

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [X] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
52 U.S.C. §§ 20507, 20510

Brief description of cause:
NVRA voter-list maintenance and public inspection; declaratory and injunctive relief.

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** None

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE: September 28, 2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ Gregory Stenstrom

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.