# EXHIBIT A

**NOTICE OF VIOLATIONS AND DEMAND FOR CORRECTIVE ACTION**

**PURSUANT TO 52 U.S.C. § 20510(b)**

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
**AND ELECTRONIC MAIL**

August 18, 2026

**The Honorable Al Schmidt**
Secretary of the Commonwealth of Pennsylvania
Department of State Office of the Secretary
401 North Street, Room 302
Harrisburg, PA 17120

CC:
**The Honorable Dave Sunday**
Attorney General, Office of the Attorney General of the Commonwealth of Pennsylvania
16th Floor, Strawberry Square
Harrisburg, PA 17120

**Eric V. Neff Acting Chief, Voting Section**
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street, NE
Room 8.923
Washington, DC 20530

## I. INTRODUCTION

This Notice is provided pursuant to Section 11(b) of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20510(b).

Unite 4 Freedom, Inc. ("U4F"), together with the identified aggrieved person(s), provides this Notice of Violations and Demand for Corrective Action concerning the State's continuing implementation of voter-registration list-maintenance programs, maintenance, preservation of records concerning those programs, and public inspection obligations imposed by the National Voter Registration Act.

The attached U4F Election Validity Scorecards, Vote Tampering Reports, and supporting machine-readable data identify documented record-level conditions requiring investigation, explanation, correction, preservation, or disclosure under the NVRA. These materials are presented to identify suspected statutory violations requiring review and corrective action. They are not presented as proof that every individual record independently establishes an NVRA violation.

This Notice identifies the statutory duties at issue, the categories of alleged violations, the supporting factual bases, individual records that appear to be in violation of legal requirements, and the corrective actions requested. The summary report is provided as a guide to the violations, but each record must be resolved and explained. It is intended to provide the notice and opportunity to cure required by Congress before a civil action may be commenced under 52 U.S.C. § 20510(b).

## II. NATURE OF THE NOTICE

Congress enacted the National Voter Registration Act to establish uniform national standards governing voter-registration administration, voter-list maintenance, and public inspection of records concerning those programs and activities.

Section 20510(b) authorizes an aggrieved person to provide written notice of violations to the chief State election official and affords the State an opportunity to investigate, correct, explain, or otherwise cure those violations before civil litigation is commenced.

This Notice concerns three categories of continuing statutory duties imposed by the NVRA:

1. The duty to conduct a reasonable and uniform voter-list maintenance program consistent with federal law;
2. The duty to maintain, preserve, and make available for public inspection those records Congress expressly identified in 52 U.S.C. § 20507(i); and
3. The duty to document, preserve, and explain the implementation of those list-maintenance programs sufficiently to permit meaningful public review and statutory compliance.

For administrative efficiency, the identified record-level conditions are summarized in this Notice and presented in detail within the attached appendices. Each documented record is documentation of a suspected violation and must be reviewed

individually. These individual records also identify a suspected pattern of violation and form part of the factual basis for this Notice of Suspected Statutory Violations.

## III. FACTUAL BASIS OF THIS NOTICE

U4F has analyzed official voter-registration, voter-history, and related election records obtained from the State and its election officials. Using those official records, U4F generated State-specific Election Validity Scorecards, Vote Tampering Reports, and supporting machine-readable datasets identifying documented conditions requiring further investigation, explanation, correction, preservation, or disclosure.

The attached analyses identify recurring categories of record-level conditions that include, where applicable:

- apparent changes to voter-history records following election certification;
- apparent irregularities in voter-registration records;
- duplicate or conflicting registration records;
- unexplained registration-date anomalies;
- record changes requiring supporting implementation documentation;
- apparent inconsistencies in voter-list maintenance activities; and
- other documented conditions relevant to the statutory duties identified in this Notice.

To the extent any documented condition arises from voter-registration or voter-list maintenance activities involving Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") registrants, this Notice likewise requests the implementation records, explanatory documentation, audit records, and preservation records sufficient to determine whether those activities were administered consistently with the National Voter Registration Act and other applicable federal law. This Notice does not assert an independent UOCAVA claim but requests records concerning any list-maintenance activities affecting UOCAVA registrants to the extent those activities are relevant to the statutory duties identified herein.

**The analyses identify documented record-level conditions requiring investigation under the National Voter Registration Act.**

Whether any individual condition ultimately constitutes a statutory violation depends upon the implementation records and explanations required by federal law and requested in this Notice.

The attached appendices identify the documented record-level conditions and the corresponding categories of implementation records requested for each alleged statutory violation.

---

## IV. ALLEGED STATUTORY VIOLATIONS

The record-level conditions identified in the attached appendices fall into three principal categories of continuing statutory violations under the National Voter Registration Act.

Each category corresponds to a separate statutory duty imposed by Congress. Although individual records may implicate more than one statutory provision, the categories above are presented separately to facilitate investigation, response, and corrective action.

The factual allegations supporting each category are contained in the attached U4F Election Validity Scorecards, Vote Tampering Reports, and supporting machine-readable datasets incorporated by reference into this Notice.

---

### A. Failure to Conduct a Reasonable and Uniform List-Maintenance Program

**52 U.S.C. § 20507(a)(4)**

The attached analyses identify documented conditions requiring investigation concerning the State's continuing implementation of voter-list maintenance programs.

These conditions include, where applicable:

- duplicate or conflicting voter-registration records;
- unexplained changes in voter-registration status;
- registrations containing internally inconsistent or illogical data;
- apparent irregular registration changes;

- registration conditions requiring documented explanation under established list-maintenance procedures; and
- other record-level conditions identified within Appendix A.

This Notice does not presume that every identified condition independently establishes a violation of federal law. Rather, the documented conditions require the State to determine whether its list-maintenance program has been implemented in a reasonable, uniform, and nondiscriminatory manner consistent with the requirements imposed by Congress.

The corresponding record-level instances are identified within the attached U4F Election Validity Scorecards and supporting datasets.

---

**B. Failure to Maintain and Make Available Records Concerning List-Maintenance Programs**

**52 U.S.C. § 20507(i)**

The attached analyses further identify documented conditions requiring production, preservation, or explanation of records concerning the implementation of the State's voter-list maintenance programs.

Among other matters, the appendices identify documented record-level conditions for which implementation records, implementation documentation, or explanatory materials are necessary to determine:

- the basis for recorded changes;
- the authority under which those changes occurred;
- the implementation of voter-list maintenance procedures;
- the preservation of required records; and
- the completeness of the State's public-inspection obligations under the National Voter Registration Act.

To the extent those implementation records exist, this Notice requests their production or inspection as part of the corrective actions described below.

To the extent such records do not exist, this Notice requests written confirmation identifying the specific records unavailable and the reasons for their absence.

---

### C. Failure to Preserve and Document Record-Level Changes Relevant to List-Maintenance Activities

The attached U4F analyses identify numerous documented changes to voter-history and voter-registration records occurring across successive official statewide voter-file snapshots.

These documented changes do not, standing alone, establish that any particular modification violated federal law. They do, however, identify record-level conditions requiring investigation, explanation, and implementation documentation sufficient to determine whether the State has maintained and preserved records concerning the implementation of its voter-list maintenance programs as required by the National Voter Registration Act.

The corresponding record-level instances are identified throughout the attached Vote Tampering Reports and implementation of machine-readable datasets.

---

## V. REQUESTED CORRECTIVE ACTION

Pursuant to 52 U.S.C. § 20510(b), U4F and the identified aggrieved person(s) respectfully request that the State **investigate, document, explain, correct, preserve, or otherwise resolve the statutory matters identified in this Notice**, and appendices.

Specifically, U4F requests that the State undertake the following corrective actions.

---

### A. Investigation of Identified Record-Level Conditions

Investigate each category of documented record-level conditions identified in the attached U4F Election Validity Scorecards, Vote Tampering Reports, and implementation of machine-readable datasets.

The investigation should determine, at a minimum:

- whether the identified condition reflects a lawful implementation of the State's voter-list maintenance program;
- the statutory or administrative authority relied upon;
- the records supporting that determination; and
- whether corrective action is required.

---

**B. Production and Inspection of Implementation Records**

Produce, or make available for inspection, all records concerning the implementation of the State's voter-list maintenance programs that are required to be maintained or made available under 52 U.S.C. § 20507(i).

To the extent records exist, they should include, where applicable:

- identification of the records reviewed in reaching the State's conclusions;
- implementation records supporting voter-list maintenance activities;
- records documenting additions, changes, removals, or corrections to voter-registration records;
- records identifying the authority for those actions;
- records identifying the responsible officials or offices;
- confirmation-notice records required by federal law;
- written procedures governing implementation of voter-list maintenance programs; and
- any other records necessary to explain the documented conditions identified in the attached appendices.

Electronic production in the format maintained by the State is preferred whenever reasonably available.

---

**C. Written Explanation of Documented Record-Level Conditions**

Provide a written explanation describing the procedures, policies, and implementation practices responsible for the documented record-level conditions identified in the attached appendices.

Where a documented condition reflects a lawful administrative process, identify:

- the applicable procedure;
- the authority under which it occurred;
- the records documenting that action; and

- the basis upon which the State concludes the action complied with the National Voter Registration Act.

Where a documented condition reflects an error, omission, or deficiency, identify:

- the corrective action taken;
- the date correction occurred;
- the records documenting the correction; and
- any prospective measures implemented to prevent recurrence.

---

**D. Preservation of Relevant Records**

Preserve all records, electronic data, audit logs, implementation records, correspondence, database transaction logs, database change-history tables, import/export transaction logs, system event logs, and implementation documentation relevant to the matters identified in this Notice until the issues presented herein have been resolved.

Such preservation should include all records reasonably necessary to reconstruct, explain, or verify the implementation of the voter-list maintenance activities identified in the attached appendices.

This preservation request includes active records, archived records, backup media, disaster-recovery copies, cloud-hosted records, replicated databases, audit repositories, and any other electronic storage containing implementation records relevant to the matters identified in this Notice.

---

**E. Written Disposition**

Provide a written response addressing each record level violation identified and the category patterns identified in this Notice.

For each category, indicate whether the State:

- agrees that corrective action is required;
- disputes the asserted statutory duty;
- disputes the factual basis;
- has undertaken corrective action;

- requires additional information; or
- contends that no violation exists.

Where corrective action is denied, identify the statutory, regulatory, or legal authority upon which the State relies.

The violation categories described below are supported by the record-level documentation contained in the incorporated appendices.

---

## VI. STATUTORY CURE PERIOD

This Notice is provided pursuant to 52 U.S.C. § 20510(b). Because this Notice is served within **one hundred twenty (120) days before the November 3, 2026 federal general election**, U4F and the identified aggrieved person(s) request that the State investigate, document, explain, correct, preserve, produce, or otherwise resolve the matters identified herein within the **twenty (20) day statutory cure period** prescribed by 52 U.S.C. § 20510(b), to the extent applicable.

If the State contends that any portion of this Notice is not subject to the **twenty (20) day cure period** provided by 52 U.S.C. § 20510(b), the State should identify the specific factual and legal basis for that position in its written response.

The applicable statutory cure period shall be determined in accordance with 52 U.S.C. § 20510(b), including the provisions governing notices provided within one hundred twenty (120) days before a federal election and the provisions applicable to notices provided within thirty (30) days before such an election.

Nothing contained in this Notice shall be construed as shortening or enlarging any period established by Congress.

---

## VII. RESERVATION OF RIGHTS

Nothing contained in this Notice should be construed as:

- an allegation that any identified individual voter is ineligible to vote;
- an allegation that any particular ballot was unlawfully counted or rejected;
- an allegation that any identified record independently establishes an NVRA violation;
- a request that any voter be removed from the registration rolls;

- a challenge to any completed election result; or
- a waiver of any right, remedy, claim, or cause of action available under federal or state law.

This Notice concerns only the continuing statutory duties imposed by the National Voter Registration Act and the State's opportunity to investigate, explain, correct, preserve, or otherwise resolve the matters identified herein before litigation is commenced.

Nothing contained in this Notice limits the right of U4F or any aggrieved person to pursue any additional administrative, judicial, or other lawful remedy arising from the matters identified herein.

---

## VIII. INCORPORATION OF APPENDICES

Each documented record identified within the appendices is a suspected violation and forms part of the factual basis supporting one or more of the statutory violation categories identified in this Notice.

The appendices accompanying this Notice consist of:

- **Appendix A** — U4F Election Validity Scorecard (Pennsylvania 2024 General Election)
- **Appendix B** — U4F Vote Tampering Report (Pennsylvania)
- **Electronic Exhibit 1** (USB Media) — Machine-Readable Supporting Data

The USB media accompanying this Notice contains the machine-readable supporting datasets, including the Pennsylvania NVRA Scorecard Section 01 and Section 02 datasets, the Pennsylvania Election Validity Scorecard dataset, and the Pennsylvania Vote Tampering Report dataset. Due to file size, certain record-level datasets are provided exclusively on USB media rather than as paper attachments.

---

## IX. REQUEST FOR WRITTEN RESPONSE

The identified aggrieved person(s) and U4F respectfully request a written response addressing the matters identified in this Notice.

The written or machine readable response should identify, for each requested record and implementation record category, whether the record is being produced, made available for inspection, withheld, unavailable, never created, destroyed pursuant to

an established retention schedule, or otherwise unavailable. For every category not produced, the response should identify the statutory, regulatory, administrative, or other legal authority supporting that determination and the official responsible for that determination.

To facilitate meaningful review and resolution, the response should identify, for each violation presented herein:

1. whether the State agrees or disagrees that the identified statutory duty applies;
2. whether the documented record-level conditions have been investigated;
3. whether corrective action has been undertaken;
4. whether responsive records exist and will be produced or made available for inspection;
5. whether additional information is requested from the identified aggrieved person(s) or U4F; and
6. the name, title, office, and contact information of the individual responsible for coordinating the State's response.

If the State concludes that any requested implementation record does not exist, the response should identify the official responsible for maintaining that category of record and state whether the record was never created, no longer exists, or cannot be located.

To the extent the State concludes that any requested corrective action is unnecessary, the response should identify the statutory, regulatory, administrative, or judicial authority upon which that determination is based.

---

## X. GOOD-FAITH RESOLUTION

The purpose of this Notice is to provide the opportunity for voluntary compliance contemplated by Congress.

The identified aggrieved person(s) and U4F remain willing to confer with the State concerning the matters identified herein, provide additional information reasonably necessary to facilitate review, and discuss appropriate corrective measures consistent with the requirements of the National Voter Registration Act.

Nothing in this Notice should be interpreted as discouraging voluntary cooperation, clarification, or resolution during the statutory cure period.

---

U4F and the identified aggrieved person(s) respectfully request the State's timely attention to the matters identified in this Notice and appreciate its cooperation in achieving voluntary compliance with the National Voter Registration Act.

---

**Respectfully submitted,**



**For Unite4Freedom**
167 LAMP & LANTERN VILLAGE,
Suite 194
CHESTERFIELD, MO 63017
314-498-2569
harryhaury@protonmail.com



**Harry R Haury**
167 LAMP & LANTERN VILLAGE,
Suite 194
CHESTERFIELD, MO 63017
314-498-2569
harryhaury@protonmail.com



**Gregory Stenstrom, Pro Se**
1541 Farmers Lane
Glen Mills, PA 19342
856-264-5495
gregorystenstrom@gmail.com

August 18, 2026

---

**APPENDIX A**

**Unite4Freedom ELECTION VALIDITY SCORECARDS**

## I. PURPOSE

This Appendix provides the factual support for the voter-registration and voter-list maintenance categories identified in the Notice of Violations and Demand for Corrective Action.

The attached U4F Election Validity Scorecards were generated from official voter-registration and voter-history records obtained from the State or its election officials. The analyses identify documented record-level conditions requiring investigation, explanation, correction, preservation, or disclosure under the National Voter Registration Act ("NVRA").

This Appendix is incorporated into the Notice by reference.

---

## II. SCOPE OF ANALYSIS

The U4F Election Validity Scorecards evaluate official statewide voter-registration records using objective analytical procedures designed to identify documented record-level conditions relevant to voter-list maintenance and recordkeeping.

The analyses do not determine election winners or losers.

The analyses do not determine voter eligibility.

The analyses do not determine whether any individual record independently establishes a violation of federal law.

Rather, the analyses identify documented conditions requiring explanation, investigation, correction, preservation, or disclosure under the statutory duties identified in the accompanying Notice.

---

## III. RELATIONSHIP TO THE NOTICE

The Election Validity Scorecard supports the statutory violation records and categories identified in Section IV of the Notice.

Where applicable, the Scorecards identify documented conditions including:

- duplicate or conflicting voter-registration records;

- unexplained registration-date anomalies;
- internally inconsistent registration records;
- apparent irregular registration changes;
- voter-list maintenance conditions requiring supporting implementation records;
- apparent inactive-status anomalies;
- and other documented record-level conditions relevant to the implementation of voter-list maintenance programs.

Each record level and category violation is supported by the corresponding record-level data contained within Electronic Exhibit 1 (USB Media)..

---

## IV. SCORECARD SUMMARY

**State:** Pennsylvania

**Election(s):**

- 2024 General Election

The attached Pennsylvania Election Validity Scorecard summarizes documented record-level conditions identified during U4F's analysis of official Pennsylvania voter-registration and voter-history records.

### Summary Tables

### Pennsylvania 2024 General Election

### Voter Registration Record Conditions

| Category | Number of Instances |
|---|---|
| Duplicate registrations | 35,431 |
| Vote history invalid or illogical | 46,443 |
| Questionable inactive status | 9,442 |
| Voted while inactive | 94 |
| Backdated registrations | 68,810 |

| Category | Number of Instances |
|---|---|
| Modified date prior to registration date | 83,693 |
| Invalid or illogical registration date | 457,428 |
| Invalid registration changes | 641,169 |
| Age discrepant registrants | 8,413 |
| Registrants with questionable address | 205,621 |
| Registrations with altered votes | 1,308,467 |

**Total registration conditions identified:** 2,865,011
**Unique registrations identified:** 2,555,665

---

**Records Associated With Votes Cast in the 2024 General Election**

| Category | Votes Cast in 2024 General Election |
|---|---|
| Duplicate registrations | 23,366 |
| Vote history invalid or illogical | 33,439 |
| Questionable inactive status | 2,317 |
| Voted while inactive | 78 |
| Backdated registrations | 47,461 |
| Modified date prior to registration date | 340 |
| Invalid or illogical registration date | 409,359 |
| Invalid registration changes | 1,014,957 |
| Age discrepant registrants | 6,166 |
| Registrants with questionable address | 131,378 |

**Total voting conditions identified:** 1,668,861
**Unique votes identified:** 1,527,639

**Certification Comparison**

| Official Source | Reported Total |
|---|---|
| State Official Certified Total (Votes counted) | 7,030,541 |
| Actual Vote Records in Data (Voters who voted at time of certification) | 7,043,363 |

**Difference:** –12,822

**Summary Observations**

The Pennsylvania Election Validity Scorecard identifies documented record-level conditions within official Pennsylvania voter-registration and voter-history records requiring investigation, explanation, correction, preservation, or disclosure under the National Voter Registration Act.

The identified conditions include duplicate or conflicting voter-registration records, registration-date anomalies, inactive-status conditions, registration changes requiring supporting documentation, questionable address conditions, and voter-history conditions requiring implementation records and explanations.

The Scorecard identifies categories of records requiring review and supporting documentation. This appendix identifies suspected record level violations supporting the category summaries. It does not independently determine that every identified condition constitutes a violation of federal law. Rather, the identified conditions are presented to facilitate investigation, determination of applicable procedures, production of implementation records, and corrective action where appropriate.

## V. INTERPRETATION OF THE SCORECARDS

The U4F Election Validity Scorecards organize documented record-level conditions into standardized analytical categories to facilitate review by election officials.

The individual suspected record violations are intended to assist the State in determining:

- whether the documented condition reflects lawful implementation of voter-list maintenance procedures;
- whether sufficient implementation records exist;
- whether additional records should be preserved or produced;
- whether correction is appropriate; and
- whether no corrective action is required.

Accordingly, the Scorecards are intended to facilitate investigation rather than predetermine investigative conclusions.

---

## VI. LIMITATIONS

The Election Validity Scorecards identify documented conditions requiring further review.

They are not intended to establish that every identified condition independently constitutes a violation of federal law.

Many documented conditions may ultimately be explained through implementation records, preserved documentation, or other information maintained by the State.

Accordingly, the purpose of this Appendix is to identify those documented conditions requiring investigation and response under the National Voter Registration Act.

---

## VII. INCORPORATED SCORECARDS

The following State-specific reports are incorporated into this Appendix.
Pennsylvania 2024 General Election Validity Scorecard

- Pennsylvania 2024 General Election Validity Scorecard
- Pennsylvania NVRA Scorecard Section 01.xlsx
- Pennsylvania NVRA Scorecard Section 02.xlsx
- PA_Scorecard_2024_20260810.xlsx

**APPENDIX B**

**Unite4Freedom VOTE TAMPERING REPORTS**

**DOCUMENTED POST-CERTIFICATION VOTER RECORD CHANGE ANALYSIS AND IDENTIFICATION OF CHANGES REQUIRING INVESTIGATION IN VOTER HISTORIES AND VOTE RECORDS**

---

## I. PURPOSE

This Appendix provides factual support for the documented voter-history and voter-registration record changes identified in the accompanying Notice of Violations and Demand for Corrective Action.

The attached U4F Vote Tampering Reports compare successive official statewide voter-history and voter-registration records obtained from the State or its election officials after certification of federal elections. Those comparisons identify documented record-level changes occurring within official State records following certification.

The purpose of this Appendix is not to determine whether any individual change was lawful or unlawful. Rather, it identifies documented changes requiring investigation and requests the implementation records, preservation records, and explanatory documentation that Congress required election officials to maintain concerning the implementation of voter-list maintenance programs and election administration.

This Appendix is incorporated into the Notice by reference.

---

## II. DOCUMENTED POST-CERTIFICATION RECORD CHANGES

The attached analyses compare successive official statewide voter-file snapshots for the same certified federal election.

The analyses identify documented changes including, where applicable:

- voter-history records changing from **Vote** to **No Vote**;
- voter-history records changing from **No Vote** to **Vote**;
- vote-history records added following certification;
- vote-history records deleted following certification;

- modifications to voter-registration records;
- and other documented record-level changes appearing between successive official statewide voter-file releases.

These documented changes are derived directly from official State records.

They are reproducible using the same official datasets supplied by the State.

---

## III. STATUTORY SIGNIFICANCE

The existence of documented post-certification record changes does not, standing alone, establish that any particular change violated federal law.

Federal law requires election officials to maintain implementation records sufficient to identify, explain, document, and reconstruct the activities producing the documented record changes identified in this Appendix. The absence of those records, or the inability to produce them, is itself information responsive to this Notice and should be expressly identified in the State's written response.

Accordingly, documented changes appearing within official election records require corresponding implementation records sufficient to identify:

- the nature of each change;
- the date and time the change occurred;
- the authority under which the change was made;
- the official, office, system, or process responsible for the change;
- the records documenting the change;
- and the statutory or administrative basis supporting the action.

Absent those implementation records, neither the State nor the public can independently determine whether the documented changes reflect lawful administrative corrections, implementation of established procedures, system operation, administrative error, or other causes.

---

## IV. REQUIRED IMPLEMENTATION RECORDS

The documented record changes identified in the attached reports require corresponding implementation records sufficient to permit the State, the public, and any reviewing authority to determine:

- identity of records reviewed in reaching the State's conclusions;
- when the change occurred;
- why the change occurred;
- who authorized the change;
- who executed the change;
- what source records supported the change;
- what quality-control or verification procedures were performed;
- whether the change was manually or automatically generated;
- whether the change modified previously certified election records;
- whether prior values were preserved;
- whether audit records exist documenting the complete transaction history;
- database transaction logs;
- database change-history records;
- import transaction logs;
- export transaction logs;
- synchronization logs;
- replication logs;
- system event logs;
- archival snapshots;
- backup and recovery records sufficient to reconstruct affected transactions;
- exception reports generated during implementation;
- reconciliation reports;
- quality-control reports;

- automated workflow logs;
- identity of all databases, applications, services, and repositories containing implementation records;
- identity of all electronic systems reviewed in preparing the State's response; and
- whether the documented change complied with the State's written voter-list maintenance procedures and applicable federal law.

If any implementation activity was performed by an automated process, software application, third-party vendor, contractor, cloud-hosted service, or other electronic system, the State should identify that system, the records maintained concerning its implementation activities, and the records relied upon in preparing its response to this Notice.

---

The implementation records requested in this Appendix are consistent with the categories of records DOJ has publicly identified as necessary to document voter-list maintenance programs and federal election administration.

Accordingly, if the State concludes that any requested category does not exist, has not been maintained, or cannot be produced, U4F requests that the State identify:

- the specific record category unavailable;
- the reason the record does not exist;
- the legal authority supporting its nonexistence or destruction;
- and whether any alternative record documents the same implementation activity.

---

## V. RELATIONSHIP TO DOJ GUIDANCE

The records requested in this Appendix are consistent with the categories of implementation and preservation records that the United States Department of Justice has identified as necessary to document the administration of federal elections and voter-list maintenance programs.

The requested records are also consistent with Congress's requirement that election officials maintain records concerning the implementation of voter-list maintenance activities and preserve records relating to acts requisite to voting.

Accordingly, this Appendix seeks the documentation necessary to explain the documented changes appearing within the State's own official records, rather than requesting speculation or unsupported conclusions concerning those changes.

---

## VI. LIMITATIONS

The attached analyses identify documented changes appearing within official State records.

The analyses do not independently establish that any particular change violated federal law.

They identify record-level changes requiring corresponding implementation records and explanatory documentation sufficient to determine whether the documented changes were lawfully implemented, properly documented, and preserved in accordance with federal law.

---

## VII. INCORPORATED REPORTS

Pennsylvania Vote Tampering Report

(Document Date: August 13, 2026)

**Electronic Exhibit 1 (USB Media)**

**PA_VoteTampering_20260807.xlsx**

# EXHIBIT B

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

Michelle Rupp
Assistant Counsel

mirupp@pa.gov

September 10, 2026

*Via Email*

Mr. Harry R. Haury
167 Lamp & Lantern Village
Suite 194
Chesterfield, MO 63017
harryhaury@protonmail.com

Mr. Gregory Stenstrom
1541 Farmers Lane
Glen Mills, PA 19342
gregorystenstrom@gmail.com

**RE: Notice of Violations Letter**

Dear Mr. Haury and Mr. Stenstrom:

On August 21, 2026, the Pennsylvania Department of State received your letter labeled "notice of violations and demand for corrective action pursuant to 52 U.S.C. § 20510(b)." I have reviewed your letter and the included flash drive.

As you know, "[a] person who is aggrieved by a violation of [the National Voter Registration Act of 1993 (NVRA)] may provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). However, your letter neither provides notice of an NVRA violation nor provides any indication that you or Unite 4 Freedom are aggrieved by any such alleged violation.

Your letter first alleges a "failure to conduct a reasonable and uniform list-maintenance program" pursuant to 52 U.S.C. § 20507(a)(4). That section requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of— (A) the death of the registrant; or (B) a change in the

residence of the registrant, in accordance with subsections (b), (c), and (d)." Thus, it applies only to removals for reason of death or change in residence.[1]

The materials you sent do not appear to relate in any way to a failure to remove dead registrants. The materials do relate in some way to addresses, but not to a change in residence. Specifically, you identified registrants who purportedly fall into one of several address-related categories: "Address in multi-unit building No unit number"; "Missing or incomplete address"; "Different Street – Same City and House Number"; "Different house number – Same City and Street." None of these categories appear to indicate that the registrants have changed their residence. Again, however, the NVRA requires only a "general program that makes a reasonable effort" to remove registrants who are no longer eligible due to a death or change in residence.[2] Because of the NVRA-required notice and waiting period, 52 U.S.C. § 20507(d)(1)(B), one should expect registrants who may have moved to remain on the voter rolls for some time prior to being removed.

Your letter next alleges a "failure to maintain and make available records concerning list-maintenance programs" pursuant to 52 U.S.C. § 20507(i). That section requires that each state "shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered."

Your letter does not indicate that any violation of this section has occurred. Instead, your letter requests the production of documents. One cannot simultaneously request documents and allege that the Department has failed to provide the documents.[3]

---

[1] *American Civil Rights Union v. Philadelphia City Commissioners*, 872 F.3d 175, 182 (3d Cir. 2017) ("By its terms, the mandatory language in Section 8(a)(4) only applies to registrants who have died or moved away."). *See also Bellitto v. Snipes*, 935 F.3d 1192, 1203 (11th Cir. 2019) ("[The NVRA] requires the states to conduct a general program of list maintenance that makes a reasonable effort to remove voters who become ineligible because of a change of address or death. Although the statute also allows and encourages the states to conduct additional programs of list maintenance . . . the statute requires nothing more of the state.").

[2] *Judicial Watch, Inc. v. Pennsylvania*, 524 F. Supp. 3d 399, 407 (M.D. Pa. 2021) (". . . Section 8(a)(4) does not require a perfect removal effort . . . ."). *See also Public Interest Legal Foundation v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025), *cert. denied* 146 S.Ct. 1772 (2026) (defining "reasonable effort" as "a serious attempt that is rational and sensible; the attempt need not be perfect, or even optimal, so long as it remains within the bounds of rationality"); *Bellitto v. Snipes*, 935 F.3d 1192, 1205 (11th Cir. 2019) (holding that a general removal program does not fail to make a "reasonable effort" just because other, "more robust" procedures may exist or because a state has not "exhaust[ed] all available methods"); *United States v. Caldwell*, 2026 WL 21866515, *3 (D.N.J. July 29, 2026) ("[the 'reasonable effort'] requirement has been understood to be modest, affording states significant discretion so long as its program reflects a 'serious attempt that is rational and sensible.'") (citing *Benson*, 136 F.4th at 625); *Republican National Committee v. Benson*, 754 F. Supp. 3d 773 (W.D. Mich. 2024) (rejecting plaintiffs' request that defendants be ordered to "'ensure that ineligible registrants are not on the voter rolls'").

[3] *See, e.g.*, *Judicial Watch, Inc.*, 524 F. Supp. 3d at 409-10; *Bellitto v. Snipes*, 268 F. Supp. 3d 1328, 1334-35 (S.D. Fla. 2017).

As to the records requested, your letter is insufficiently specific for the Department to conduct any reasonable search. If there are specific records that you request be made available for your inspection and possible photocopying, please let us know which records you request. In the meanwhile, please be advised that the NVRA does not obligate the Department to evaluate more than a million and a half voter registration records (many of which have likely been updated since the January 13, 2025 voter file that you used for your "Scorecard") just because you flagged them as possibly having problems unrelated to the NVRA.

Finally, your letter alleges a "failure to preserve and document record-level changes relevant to list-maintenance activities," based on "numerous documented changes to voter-history and voter-registration records occurring across successive official statewide voter-file snapshots." Neither the attached "Vote Tampering Report" nor the explanation in the attached "Appendix B" establish that Pennsylvania fails to maintain records of changes to registration records.

The Department works diligently with all of Pennsylvania's sixty-seven counties to ensure the list maintenance requirements mandated by both federal and Pennsylvania law are completed. County election officials conduct list maintenance efforts throughout the year to ensure accurate and updated voter registration rolls. These efforts are detailed in the Department's most recent annual report on the Administration of Voter Registration in Pennsylvania issued on June 30, 2026 which can be found at https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos-voter-registration-report-2025-final-pdf.pdf. As you will see in the report, Pennsylvania's counties sent approximately 437,599 list maintenance notices to their registrants last year. They also cancelled approximately 338,295 registration records, many based on death or a change in residence, as required by the NVRA.

The concerns you have presented do not establish that the NVRA has been violated or that you have been aggrieved by any such violation, as required to bring suit pursuant to 52 U.S.C. § 20510(b)(1). Moreover, your claims reveal fundamental misunderstandings of what the NVRA requires and of Pennsylvania's registration and list maintenance procedures. For example, you flagged a number of records as "registration changed during cut-off period." The voter registration deadline is the deadline for application forms to be *received* by the counties. 25 P.S. § 3071(b); 52 U.S.C. § 20507(a)(1). It is not a deadline for counties to actually register the applicants or update their records. Indeed, because the number of applications received tends to increase immediately before the deadline, counties will often need those few days between the voter registration deadline and the election for the processing of applications to occur in time for the election, as required by law. You also flagged a number of records that have registration dates older than the registrants' birth dates. Many of those registrants were registered to vote before the Statewide Uniform Registry of Electors was built in the early 2000s, and when their records were imported from county legacy systems, SURE populated default dates for their registration dates. Some dates can also be placeholders for voters whose identity is protected. Again, neither of these constitute NVRA violations.

The Department takes list maintenance responsibilities quite seriously and works closely with Pennsylvania's counties to ensure that our voter rolls are accurate and updated in accordance with both federal and Pennsylvania law.

Respectfully,

Michelle Rupp
Assistant Counsel

CC: Renee Mazer, reneemazer@gmail.com

# EXHIBIT C

UNITE ★ 4 FREEDOM

# Pennsylvania
# Vote Tampering Report

## Changes to voter participation histories AFTER election certification

The counts below reflect the number of changes made to individual voter history records after an election was certified. The top data set in each election chart includes changes to vote participation history for voter records that exist in both voter record copies being compared. The second data set in each election chart includes the additions or deletions of entire voter profiles and their associated voting participation histories for that election. Each instance documents modifications made to official federal records after the final certification of the election.

| 2024 General Election | Changes | 12/18/2024 compared to 01/13/2025 | 01/13/2025 compared to 01/19/2026 |
|---|---|---|---|
| Voter exists in ALL voter record copies being compared | Vote to NO vote | 4,073 | 101,785 |
| | NO Vote to Vote | 1,835,644 | 2,384 |
| Voter exists in only ONE copy of voter records being compared | Voter/Ballot Deleted | 6,176 | 88,781 |
| | Voter/Ballot Added | 39 | 711 |
| TOTAL NUMBER OF CHANGES | 2,039,593 | 1,845,932 | 193,661 |

| 2022 General Election | Changes | 12/26/2022 compared to 01/15/2024 | 01/15/2024 compared to 09/16/2024 |
|---|---|---|---|
| Voter exists in ALL voter record copies being compared | Vote to NO vote | 68,177 | 54,950 |
| | NO Vote to Vote | 496 | 3,865 |
| Voter exists in only ONE copy of voter records being compared | Voter/Ballot Deleted | 70,272 | 59,795 |
| | Voter/Ballot Added | 237 | 1,427 |
| TOTAL NUMBER OF CHANGES | 259,219 | 139,182 | 120,037 |

| 2020 General Election | Changes | 12/26/2022 compared to 01/15/2024 | 01/15/2024 compared to 09/16/2024 |
|---|---|---|---|
| Voter exists in ALL voter record copies being compared | Vote to NO vote | 94,236 | 69,408 |
| | NO Vote to Vote | 11,118 | 12,677 |
| Voter exists in only ONE copy of voter records being compared | Voter/Ballot Deleted | 112,447 | 80,708 |
| | Voter/Ballot Added | 1,281 | 3,247 |
| TOTAL NUMBER OF CHANGES | 385,122 | 219,082 | 166,040 |


© Unite4Freedom

# EXHIBIT D

UNITE ★ 4 FREEDOM

*"Congress seeks. . . .to guard the election of members of Congress against any possible unfairness by compelling, under its pains and penalties, everyone concerned in holding the election to a strict and scrupulous observance of every duty devolved upon him while so engaged. . . . The evil intent consists in disobedience to the law."* —In re Coy, 127 U.S. 731 (1888)

# Pennsylvania 2024 General Election Validity Scorecard

## ★ 1. Were the voter rolls accurate, as required by the National Voter Registration Act of 1993?

| Registrations with material errors and omissions as per the Civil Rights Acts of 1964 | Number of Instances* |
|---|---|
| Duplicate registrations | 35,431 |
| Vote history invalid or illogical | 46,443 |
| Questionable inactive status | 9,442 |
| Voted while inactive | 94 |
| Backdated registrations | 68,810 |
| Modified date prior to registration date | 83,693 |
| Invalid or illogical registration date | 457,428 |
| Invalid registration changes | 641,169 |
| Age discrepant registrants | 8,413 |
| Registrants with questionable address | 205,621 |
| Registrations with altered votes | 1,308,467 |
| **TOTAL REGISTRATION VIOLATIONS PROHIBITED BY LAW:** | **2,865,011** |
| **UNIQUE REGISTRATIONS PROHIBITED BY LAW:** | **2,555,665** |

**28.8%** REGISTRATION ERROR RATE

## ★ 2. Were the votes counted from eligible voters, as required by the US Constitution?

| Registrations with material errors and omissions whose votes were counted | Votes cast in 2024 GE**** |
|---|---|
| Duplicate registrations | 23,366 |
| Vote history invalid or illogical | 33,439 |
| Questionable inactive status | 2,317 |
| Voted while inactive | 78 |
| Backdated registrations | 47,461 |
| Modified date prior to registration date | 340 |
| Invalid or illogical registration date | 409,359 |
| Invalid registration changes | 1,014,957 |
| Age discrepant registrants | 6,166 |
| Registrants with questionable address | 131,378 |
| **TOTAL VOTING VIOLATIONS PROHIBITED BY LAW:** | **1,668,861** |
| **UNIQUE VOTES PROHIBITED BY LAW:** | **1,527,639** |

**21.7%** VOTE ERROR RATE

## ★ 3. Was the number of votes counted equal to the number of voters who voted?

| Official Source | Reported Total by Official Source |
|---|---|
| State Official Certified Total (Votes counted) | 7,030,541 |
| Actual Vote Records in the Data (Voters who voted—at time of certification) | 7,043,363 |
| **DIFFERENCE (LESS votes counted than voters who voted):** | **–12,822** |

## ★ 4. Was the number of ballots in error valid according to the Help America Vote Act of 2002?

| | |
|---|---|
| Ballots with apparent voting violations in the 2024 GE according to Official State data | 1,527,639 |
| Allowable machine error rate is 1/10,000,000 ballot positions or 1/125,000 ballots | 57 |
| **Total excess ballots counted in error: Provable accuracy fails to meet any protective legal standard** | **1,527,582** |

## ★ TOTAL ELECTION ERRORS (Sections 2+3) . . . . . . . . . . . . . . . . . . . . . . . . 1,540,461

**21.9%** TOTAL ELECTION ERROR RATE

*Extracted from an official copy of the Pennsylvania voter database provided by Pennsylvania Department of State, dated January 13, 2025*

Unite4Freedom.com ★ info@Unite4Freedom.com

© Unite4Freedom

# EXHIBIT E

# EXHIBIT E

## PENNSYLVANIA 2024 NVRA SCORECARD - SECTION 1

### Data Summary and Native CSV Identification

| Item | Value |
|---|---|
| Source file | 2024_PA_NVRA_ScorecardSection01(1).csv |
| SHA-256 | ea615a430e017bb5a3dc563c06aa63249a615837b8686152627180c13c4fdbd7 |
| File size | 361,292,120 bytes |
| Data records | 2,865,011 |
| Unique registration identifiers | 2,555,665 |
| Unique complete rows | 2,864,985 |
| Exact duplicate rows | 26 |
| Records not having nine fields | 0 |

## Purpose and scope

This exhibit authenticates the identified native CSV by filename, exact byte size, and SHA-256 hash. The file is too large for CM/ECF and is not attached. A publicly accessible, byte-for-byte identical copy is available at https://cloud.patriot.online/s/9nKYFyYM6BSDDaH as 2024_PA_NVRA_ScorecardSection01.csv. Its size and hash were verified September 23, 2026. Plaintiffs will furnish it by electronic media, secure transfer, or another method directed by the Court. This summary does not replace the native file; all counts were computed from every data row.

The CSV has no header row. Each record contains nine fields in this order: category; subcategory; registration identifier; last name; first name; middle name; suffix; status; and county.

> *Important limitation: the labels and counts report analytical flags or conditions in the source data. They are not, by themselves, adjudications that any named voter or official committed an unlawful act. A registration identifier may appear in more than one flagged row, so category and county totals are counts of flagged records, not necessarily distinct voters.*

## Top-level category totals

| Category | Flagged records |
|---|---|
| 11 Registrations with Altered Votes | 1,308,467 |
| 08 Illegal or Invalid Registration Changes | 641,169 |
| 07 Invalid or Illogical Registration Date | 457,428 |
| 10 Registrants with questionable address | 205,621 |
| 06 Modified Date Prior to Registration Date | 83,693 |
| 05 Backdated Registrations | 68,810 |
| 02 Vote History Invalid or Illogical | 46,443 |
| 01 Illegal Duplicate Registrations | 35,431 |
| 03 Questionable inactive status | 9,442 |
| 09 Age Discrepant Registrants | 8,413 |
| 04 Voted while Inactive | 94 |
| **TOTAL** | **2,865,011** |

## Subcategory totals

| Subcategory | Flagged records |
|---|---|
| 01 Registrants with Votes Removed | 1,308,467 |
| 01 Registration Changed during cut-off period | 640,161 |
| 03 Registration Date on Jan 1 1801 through 2022 | 268,878 |
| - | 152,597 |
| 01 Address in multi-unit building No unit number | 104,200 |
| 04 Registration Date on Federal Holiday not Jan 01 | 97,900 |
| 03 Different Street - Same City and House number | 64,131 |
| 05 Voted in 2022 GE but registered after the cut-off date | 58,299 |
| 02 Registration Date and Age do not Match | 32,264 |
| 04 Different house number - Same City and Street | 27,083 |
| 05 Voted in 2022 GE but not in declared party | 25,543 |
| 05 Changed first name | 18,764 |
| 01 Votes before registration date | 10,959 |
| 02 Missing or incomplete address | 10,207 |
| 02 Vote History and Last Vote Date Mismatch | 9,941 |
| 01 Active voter set inactive | 9,442 |
| 03 Same Person new Paid | 8,937 |
| 03 Changed DOB | 7,957 |
| 01 Full duplicate | 4,992 |
| 02 Duplicate Paid | 2,114 |
| 04 Duplicate names - same first and last name | 624 |
| 02 Changed party but no date last changed update | 566 |
| 03 Changed Address but no date last changed update | 442 |
| 02 Younger than 17 or Older than 115 | 404 |
| 01 Registration with NO Date | 87 |
| 01 Registrations with No Age | 52 |
| **TOTAL** | **2,865,011** |

## County totals

*Counts below are flagged records. They should not be read as unique voter counts.*

| County | Records | County | Records |
|---|---|---|---|
| ALLEGHENY | 563,507 | LYCOMING | 7,468 |
| PHILADELPHIA | 530,749 | PIKE | 7,200 |
| MONTGOMERY | 294,858 | ARMSTRONG | 7,054 |
| BUCKS | 209,030 | SOMERSET | 6,688 |
| DELAWARE | 179,866 | CRAWFORD | 6,322 |
| YORK | 131,336 | INDIANA | 6,055 |
| CHESTER | 79,314 | LAWRENCE | 6,038 |
| WESTMORELAND | 70,180 | CARBON | 5,451 |
| LUZERNE | 64,482 | UNION | 5,450 |
| CUMBERLAND | 62,251 | COLUMBIA | 4,941 |
| BERKS | 54,698 | CLEARFIELD | 4,809 |
| LEHIGH | 49,945 | PERRY | 4,431 |
| DAUPHIN | 45,687 | WAYNE | 3,942 |
| LANCASTER | 40,612 | BRADFORD | 3,713 |
| ERIE | 38,471 | SUSQUEHANNA | 3,677 |
| NORTHAMPTON | 33,796 | BEDFORD | 3,613 |
| FRANKLIN | 33,381 | CLARION | 3,254 |
| LEBANON | 31,063 | GREENE | 3,239 |
| NORTHUMBERLAND | 26,084 | MIFFLIN | 3,046 |
| MONROE | 19,970 | TIOGA | 2,958 |
| BUTLER | 18,256 | WARREN | 2,770 |
| BLAIR | 18,144 | McKEAN | 2,717 |
| WASHINGTON | 18,016 | JEFFERSON | 2,550 |
| LACKAWANNA | 16,519 | CLINTON | 2,284 |
| CENTRE | 15,881 | ELK | 2,022 |
| SNYDER | 13,332 | JUNIATA | 1,974 |
| BEAVER | 12,653 | WYOMING | 1,953 |
| ADAMS | 12,443 | MONTOUR | 1,825 |
| VENANGO | 11,846 | POTTER | 1,462 |
| SCHUYLKILL | 9,762 | FULTON | 1,157 |
| FAYETTE | 9,749 | SULLIVAN | 538 |
| MERCER | 9,738 | CAMERON | 428 |
| HUNTINGDON | 9,734 | FOREST | 338 |
| CAMBRIA | 8,291 | | |

## Representative masked entries

One source row per top-level category is shown to illustrate structure. Names are omitted, and each registration identifier is replaced by a deterministic token consisting of the first ten hexadecimal characters of its SHA-256 digest. Status and county are retained. The identified native CSV remains the controlling record-level data file.

| Category | ID token | Subcategory | Status | County |
|---|---|---|---|---|
| 01 Illegal Duplicate Registrations | ID-8E99F123A1 | 01 Full duplicate | I | WESTMORELAND |
| 02 Vote History Invalid or Illogical | ID-2D772827A7 | 01 Votes before registration date | A | PHILADELPHIA |
| 03 Questionable inactive status | ID-C19726790F | 01 Active voter set inactive | I | ALLEGHENY |
| 04 Voted while Inactive | ID-01C48E90A7 | - | I | WARREN |
| 05 Backdated Registrations | ID-339D5CB94D | - | A | ALLEGHENY |
| 06 Modified Date Prior to Registration Date | ID-716CCF3809 | - | I | ALLEGHENY |
| 07 Invalid or Illogical Registration Date | ID-DE38F23D52 | 04 Registration Date on Federal Holiday not Jan 01 | A | BUCKS |
| 08 Illegal or Invalid Registration Changes | ID-70DA5CDC2C | 01 Registration Changed during cut-off period | A | BUCKS |
| 09 Age Discrepant Registrants | ID-6382741FA5 | 03 Changed DOB | A | ALLEGHENY |
| 10 Registrants with questionable address | ID-C96D5A8A5F | 01 Address in multi-unit building No unit number | A | PHILADELPHIA |
| 11 Registrations with Altered Votes | ID-2197EB5635 | 01 Registrants with Votes Removed | A | ALLEGHENY |

## Method and reproducibility

The file was read sequentially as UTF-8 comma-separated data. Record count includes only rows having exactly nine fields. Unique registration identifiers were counted from field 3. Exact duplicate rows were determined by equality across all nine fields. Category, subcategory, and county totals were counted directly from fields 1, 2, and 9. The SHA-256 value above permits verification that the native file reviewed by another person is byte-for-byte identical.

### Filing note

The native CSV cannot practicably be appended through CM/ECF because of its size. It is publicly available at https://cloud.patriot.online/s/9nKYFyYM6BSDDaH under the hosted filename 2024_PA_NVRA_ScorecardSection01.csv. Plaintiffs will provide the native file to the Court and Defendant by electronic media, secure transfer, or another method directed by the Court. The filename, exact byte size, and SHA-256 value printed on page 1 permit verification that any downloaded or separately delivered copy is byte-for-byte identical to the file summarized here.

# EXHIBIT F

# EXHIBIT F

## PENNSYLVANIA 2024 NVRA SCORECARD - SECTION 2

### Data Summary and Native CSV Identification

| Item | Value |
| --- | --- |
| Source file | 2024_PA_NVRA_ScorecardSection02(1).csv |
| SHA-256 | dde6753eda6988c65a1a0ae3884d947fbf4e06c16ae21e7dbd0ad649bcdf6a11 |
| File size | 226,133,790 bytes |
| Data records | 1,668,861 |
| Unique registration identifiers | 1,527,639 |
| Unique complete rows | 1,668,851 |
| Exact duplicate rows | 10 |
| Records not having nine fields | 0 |

## Purpose and scope

This exhibit authenticates the identified native CSV by filename, exact byte size, and SHA-256 hash. The file is too large for CM/ECF and is not attached. A publicly accessible, byte-for-byte identical copy is available at https://cloud.patriot.online/s/9nKYFyYM6BSDDaH as 2024_PA_NVRA_ScorecardSection02.csv. Its size and hash were verified September 23, 2026. Plaintiffs will furnish it by electronic media, secure transfer, or another method directed by the Court. This summary does not replace the native file; all counts were computed from every data row.

The CSV has no header row. Each record contains nine fields in this order: category; subcategory; registration identifier; last name; first name; middle name; suffix; status; and county.

> *Important limitation: the labels and counts report analytical flags or conditions in the source data. They are not, by themselves, adjudications that any named voter or official committed an unlawful act. A registration identifier may appear in more than one flagged row, so category and county totals are counts of flagged records, not necessarily distinct voters.*

## Top-level category totals

| Category | Flagged records |
| --- | --- |
| 08 Illegal or Invalid Registration Changes | 1,014,957 |
| 07 Invalid or Illogical Registration Date | 409,359 |
| 10 Registrants with questionable address | 131,378 |
| 05 Backdated Registrations | 47,461 |
| 02 Vote History Invalid or Illogical | 33,439 |
| 01 Illegal Duplicate Registrations | 23,366 |
| 09 Age Discrepant Registrants | 6,166 |
| 03 Questionable inactive status | 2,317 |
| 06 Modified Date Prior to Registration Date | 340 |
| 04 Voted while Inactive | 78 |
| **TOTAL** | **1,668,861** |

## Subcategory totals

| Subcategory | Flagged records |
|---|---|
| 01 Registration Changed during cut-off period | 1,014,833 |
| 03 Registration Date on Jan 1 1801 through 2022 | 242,394 |
| 04 Registration Date on Federal Holiday not Jan 01 | 80,072 |
| 05 Voted in 2022 GE but registered after the cut-off date | 58,299 |
| 01 Address in multi-unit building No unit number | 53,004 |
| 03 Different Street - Same City and House number | 51,786 |
| - | 47,879 |
| 02 Registration Date and Age do not Match | 28,527 |
| 05 Voted in 2022 GE but not in declared party | 25,543 |
| 04 Different house number - Same City and Street | 21,178 |
| 05 Changed first name | 14,400 |
| 01 Votes before registration date | 7,807 |
| 03 Changed DOB | 5,978 |
| 03 Same Person new Paid | 5,732 |
| 02 Missing or incomplete address | 5,410 |
| 01 Active voter set inactive | 2,317 |
| 01 Full duplicate | 1,772 |
| 02 Duplicate Paid | 1,034 |
| 04 Duplicate names - same first and last name | 428 |
| 02 Younger than 17 or Older than 115 | 169 |
| 03 Changed Address but no date last changed update | 111 |
| 02 Vote History and Last Vote Date Mismatch | 89 |
| 01 Registration with NO Date | 67 |
| 01 Registrations with No Age | 19 |
| 02 Changed party but no date last changed update | 13 |
| **TOTAL** | **1,668,861** |

## County totals

*Counts below are flagged records. They should not be read as unique voter counts.*

| County | Records | County | Records |
|---|---|---|---|
| ALLEGHENY | 148,003 | LYCOMING | 8,271 |
| MONTGOMERY | 142,925 | SOMERSET | 7,659 |
| PHILADELPHIA | 134,817 | ARMSTRONG | 7,500 |
| YORK | 132,668 | LAWRENCE | 7,237 |
| CHESTER | 92,663 | CRAWFORD | 6,653 |
| BUCKS | 86,192 | INDIANA | 6,556 |
| DELAWARE | 73,324 | CARBON | 6,329 |
| CUMBERLAND | 63,615 | COLUMBIA | 5,634 |
| WESTMORELAND | 50,606 | CLEARFIELD | 5,548 |
| DAUPHIN | 46,836 | UNION | 5,475 |
| LANCASTER | 44,282 | PERRY | 4,979 |
| LUZERNE | 42,418 | HUNTINGDON | 4,899 |
| NORTHAMPTON | 41,510 | WAYNE | 4,800 |
| ERIE | 41,454 | BEDFORD | 4,328 |
| LEHIGH | 40,537 | SUSQUEHANNA | 4,048 |
| BERKS | 37,945 | BRADFORD | 4,020 |
| FRANKLIN | 34,490 | CLARION | 3,747 |
| LEBANON | 30,989 | MIFFLIN | 3,546 |
| NORTHUMBERLAND | 23,837 | GREENE | 3,543 |
| BUTLER | 22,839 | TIOGA | 3,416 |
| MONROE | 22,762 | WARREN | 3,267 |
| WASHINGTON | 22,232 | McKEAN | 3,105 |
| LACKAWANNA | 18,626 | JEFFERSON | 3,038 |
| BLAIR | 18,127 | CLINTON | 2,662 |
| CENTRE | 16,500 | JUNIATA | 2,317 |
| BEAVER | 14,506 | ELK | 2,280 |
| ADAMS | 13,556 | MONTOUR | 2,193 |
| SNYDER | 12,750 | WYOMING | 2,134 |
| VENANGO | 12,453 | POTTER | 1,603 |
| FAYETTE | 11,228 | FULTON | 1,274 |
| SCHUYLKILL | 11,061 | SULLIVAN | 600 |
| MERCER | 10,621 | CAMERON | 438 |
| CAMBRIA | 9,520 | FOREST | 360 |
| PIKE | 9,510 | | |

## Representative masked entries

One source row per top-level category is shown to illustrate structure. Names are omitted, and each registration identifier is replaced by a deterministic token consisting of the first ten hexadecimal characters of its SHA-256 digest. Status and county are retained. The identified native CSV remains the controlling record-level data file.

| Category | ID token | Subcategory | Status | County |
|---|---|---|---|---|
| 01 Illegal Duplicate Registrations | ID-3687D14612 | 02 Duplicate Paid | A | WASHINGTON |
| 02 Vote History Invalid or Illogical | ID-46E6E25812 | 01 Votes before registration date | A | MONTGOMERY |
| 03 Questionable inactive status | ID-5E8DBCAC54 | 01 Active voter set inactive | I | BERKS |
| 04 Voted while Inactive | ID-5CD504A8B1 | - | I | CAMBRIA |
| 05 Backdated Registrations | ID-DAE4096DF6 | - | A | ALLEGHENY |
| 06 Modified Date Prior to Registration Date | ID-8A09784803 | - | A | PHILADELPHIA |
| 07 Invalid or Illogical Registration Date | ID-A81F467318 | 02 Registration Date and Age do not Match | A | MONROE |
| 08 Illegal or Invalid Registration Changes | ID-BE71E36DB3 | 01 Registration Changed during cut-off period | A | MERCER |
| 09 Age Discrepant Registrants | ID-F94BCEBD86 | 01 Registrations with No Age | A | PHILADELPHIA |
| 10 Registrants with questionable address | ID-6B8BE2296B | 01 Address in multi-unit building No unit number | A | PHILADELPHIA |

## Method and reproducibility

The file was read sequentially as UTF-8 comma-separated data. Record count includes only rows having exactly nine fields. Unique registration identifiers were counted from field 3. Exact duplicate rows were determined by equality across all nine fields. Category, subcategory, and county totals were counted directly from fields 1, 2, and 9. The SHA-256 value above permits verification that the native file reviewed by another person is byte-for-byte identical.

### Filing note

The native CSV cannot practicably be appended through CM/ECF because of its size. It is publicly available at https://cloud.patriot.online/s/9nKYFyYM6BSDDaH under the hosted filename 2024_PA_NVRA_ScorecardSection02.csv. Plaintiffs will provide the native file to the Court and Defendant by electronic media, secure transfer, or another method directed by the Court. The filename, exact byte size, and SHA-256 value printed on page 1 permit verification that any downloaded or separately delivered copy is byte-for-byte identical to the file summarized here.

# EXHIBIT G

# EXHIBIT G

## PENNSYLVANIA NVRA REQUEST AND RESPONSE INDEX

This demonstrative index maps the specific record categories requested in Plaintiffs' August 18, 2026 Notice to the Pennsylvania Department of State's September 10, 2026 response. It does not replace the underlying documents. Page references are to the 43-page compiled filing exhibit PDF designated Exhibits A-F.

Record status is stated only from the face of the September 10 response. That response confirms receipt and review of the Notice and flash drive, but does not identify any record as produced, schedule an inspection, identify a records custodian, or provide a production timetable. See Ex. B, compiled PDF pp. 26-29.

## A. Notice, receipt, and response posture

| Record fact | Supporting location |
|---|---|
| Notice served within 120 days of the November 3, 2026 federal election and invokes the 20-day period. | Ex. A, compiled PDF p. 10 (Notice p. 9). |
| Department acknowledges receipt on August 21 and review of the Notice and included flash drive. | Ex. B, compiled PDF p. 26. |
| Notice incorporates the Scorecard, Tampering Report, and native supporting data supplied by USB media. | Ex. A, compiled PDF p. 11 (Notice p. 10). |
| Response addresses the asserted statutory duties and selected data categories, but disputes notice adequacy and violation. | Ex. B, compiled PDF pp. 26-29. |

## B. Requested records and Pennsylvania's stated response

| Requested category | Notice specificity | September 10 response | Status shown by response |
|---|---|---|---|
| **Investigation of identified record-level conditions** | Determine whether each condition reflects lawful implementation, identify authority and supporting records, and determine whether correction is required. Ex. A, p. 7. | Response declines a record-by-record evaluation and states that the NVRA does not require evaluation of more than 1.5 million records. Ex. B, p. 28. | No category-specific investigation results or supporting records identified. |
| **Implementation records** | Records supporting implementation of voter-list-maintenance activities. Ex. A, p. 8. | Response calls the request insufficiently specific, while describing statewide programs and referring to the annual report. Ex. B, pp. 28-29. | No implementation record identified as produced or available for inspection. |
| **Additions, changes, removals, and corrections** | Records documenting additions, changes, removals, or corrections to voter-registration records. Ex. A, p. 8. | Response supplies general explanations for post-deadline processing and legacy/default registration dates. Ex. B, p. 28. | No transaction history, change record, or correction record identified. |
| **Authority for record-level actions** | Records identifying the authority for additions, changes, removals, or corrections. Ex. A, p. 8. | Response cites general statutes and decisions, but does not identify the authority recorded for individual actions or categories. Ex. B, pp. 26-29. | No record-level authority field or adjudication record identified. |
| **Responsible officials and offices** | Records identifying officials or offices responsible for list-maintenance actions. Ex. A, p. 8; requested response coordinator and custodian information at p. 12. | Response is signed by Assistant Counsel and refers generally to 67 counties. Ex. B, pp. 26, 28-29. | No program custodian, database custodian, or production coordinator identified. |
| **Confirmation-notice records** | Confirmation-notice records required by federal law. Ex. A, p. 8. | Response explains generally that registrants may remain on the rolls during the notice and waiting process and cites annual totals. Ex. B, pp. 27-28. | No notice, response, disposition, or county-level implementation record identified as produced. |
| **Written procedures** | Written procedures governing implementation of list-maintenance programs. Ex. A, p. 8. | Response refers to Pennsylvania's annual report and provides selected narrative explanations. Ex. B, p. 28. | No written procedure identified as produced or offered for inspection. |

| Requested category | Notice specificity | September 10 response | Status shown by response |
|---|---|---|---|
| **Explanations and correction documentation** | For lawful conditions: procedure, authority, supporting records, and compliance basis. For errors: correction, date, documentation, and prevention measures. Ex. A, pp. 8-9. | Response provides explanations for selected categories but rejects the asserted violations. Ex. B, pp. 28-29. | No supporting implementation or correction documentation identified. |
| **Audit logs and preservation** | Preserve audit logs, database transaction logs, change-history tables, import/export logs, event logs, backups, archives, and related repositories. Ex. A, p. 9. | Response states that Plaintiffs did not establish a failure to maintain change records. Ex. B, p. 28. | No preservation commitment, retention schedule, system inventory, or audit-log custodian identified. |
| **Category-by-category disposition** | For each category, state agreement or dispute, investigation status, correction status, record availability, need for more information, and responsible coordinator. Ex. A, pp. 9-12. | Response disputes the claims generally and addresses selected categories. Ex. B, pp. 26-29. | No complete category-by-category disposition or record-status index provided. |
| **Inspection or electronic production** | Produce or make covered records available for inspection; electronic production preferred where reasonably available. Ex. A, p. 8. | Response asks Plaintiffs to specify records further and does not provide an inspection date or production protocol. Ex. B, p. 28. | No inspection scheduled and no production format or timetable identified. |
| **Unavailable, destroyed, or never-created records** | For every unproduced category, identify whether records are withheld, unavailable, never created, destroyed under schedule, or cannot be located, with supporting authority and responsible official. Ex. A, pp. 11-12. | Response does not state that responsive categories do not exist and does not provide a withholding or destruction index. Ex. B, pp. 26-29. | Existence and disposition of responsive records remain unidentified. |

## C. Record references

| Document | Compiled PDF pages | Description |
|---|---|---|
| **Exhibit A** | 1-24 | August 18, 2026 Notice, Appendix A, and Appendix B. |
| **Exhibit B** | 25-29 | September 10, 2026 Pennsylvania Department of State response. |
| **Exhibit C** | 30-31 | Pennsylvania Vote Tampering Report. |
| **Exhibit D** | 32-33 | Pennsylvania 2024 General Election Validity Scorecard. |
| **Exhibit E** | 34-38 | Section 1 native CSV identification and data summary. |
| **Exhibit F** | 39-43 | Section 2 native CSV identification and data summary. |

# EXHIBIT H

# EXHIBIT H

## PENNSYLVANIA 2025 VOTER REGISTRATION REPORT

### SELECTED OFFICIAL EXCERPTS

Source: Commonwealth of Pennsylvania, Department of State
2025 Annual Report on the Administration of Voter Registration in Pennsylvania
Issued June 30, 2026

Official source identified by the Department in its September 10, 2026 response to U4F and Gregory Stenstrom. See Exhibit B, compiled PDF page 28.

Official URL:
https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos-voter-registration-report-2025-final-pdf.pdf

**Selected source pages included**

PDF pages 1-2: Cover and Table of Contents
PDF page 4: Executive Summary
PDF pages 13-25: Complete List Maintenance section through the active-cancellation summary
PDF page 63: Appendix D description of county-level list-maintenance records

The original official pages are reproduced without alteration. Intervening and remaining pages are omitted from this excerpt for filing economy. The complete 98-page report remains available at the official URL above.



# Administration of Voter Registration in Pennsylvania

## 2025 Annual Report to the Pennsylvania General Assembly

June 30, 2026

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF STATE

# Table of Contents


| | |
|---|---|
| Secretary's Letter | 3 |
| Executive Summary | 4 |
| Opportunities for Improvement | 6 |
| Voter Registration Statistics | 7 |
| List Maintenance | 13 |
| National Voter Registration Act | 27 |
| Online Voter Registration | 32 |
| Conclusion | 35 |
| Annual Report Data: Appendices | 36 |

# Executive Summary

In 2025, the Department of State (Department) worked closely with the public, each of the 67 county boards of elections, government agencies consigned voter registration responsibilities, and voter registration advocacy organizations to help ensure all eligible Pennsylvanians who wanted to register to vote could do so. This report summarizes registration data and initiatives by these groups to support voter registration administration in Pennsylvania. The data contained in this report reflects transactions processed through the Statewide Uniform Registry of Electors (SURE) system between January 1, 2025, and December 31, 2025.

As of December 31, 2025, Pennsylvania had approximately 8.92 million registered voters. This represents a 0.58% increase in the number of registered voters since the end of 2024 and a 2.2% increase since the end of 2021, the last year succeeding a presidential election. Since 2021, the number of voters registered as members of the Democratic Party decreased, the number of voters registered as members of the Republican Party increased, and the number of voters who chose to be unaffiliated or registered with a non-major party increased.

Pennsylvania voters registered in 2025 through a variety of methods, demonstrating the success of the Department's efforts to expand opportunities for Pennsylvanians to obtain or update a voter record. A total of 469,001 applications were submitted to counties through the Pennsylvania Department of Transportation ("PennDOT") via its automatic voter registration ("AVR") program, where Pennsylvanians can register or update their registration as part of a one-stop process during PennDOT interactions.

Other voter registration methods also continued to prove popular. Approximately 50,484 applications for registration as a new voter were submitted online, and approximately 16,183 applications for registration as a new voter were submitted on paper forms.

The Department also continued its partnership with other government agencies designated under federal and state law to facilitate registration and to update voter rolls when individuals use those agencies' services. A total of 15,972 registration applications were submitted through these partner agencies (not including PennDOT), with County Assistance Offices (CAOs) providing the majority of these submissions.

Pennsylvania also took steps to ensure that its voter rolls remain up to date. During 2025, counties sent 437,599 notices to registered voters relating to list maintenance, the process

# List Maintenance

This section summarizes voter list maintenance activities conducted during the 2025 calendar year. Generally, the practice of "list maintenance" encompasses the different methods that county election and voter registration officials use to manage voter registration rolls and ensure they are accurate. Both state and county election officials follow careful and appropriate steps, in compliance with federal and state laws, to determine whether a voter should be transferred to a new address, marked as *Inactive*, or removed from the registration rolls.

## List Maintenance Mailings

During 2025, counties sent approximately 437,599 notices to voters: 59,802 Five-Year Notices; 119,057 National Change of Address (NCOA) Notices; 6,497 Duplicate Notices; 42,038 In-State Update Notices; 27,331 Out-of-State Update Notices; and 182,874 Address Verification Notices (AVNs).

When reviewing list maintenance activity summaries below, please note that voter responses to most notices generally fall into six broad categories:

- **Non-Response:** The voter did not respond to the mailed notice.
- **Returned Undeliverable:** The postal service was unable to deliver the notice by mail, and the notice was returned as undeliverable to the county voter registration commission.
- **Returned Confirmation:** The voter responded to the notice and confirmed their eligibility at their address of registration.
- **Voter Moved Within County:** The voter responded to the notice and confirmed they moved to a new address within the same county.
- **Voter Moved Out of County:** The voter responded to the notice and confirmed they no longer reside in the county but live elsewhere in Pennsylvania.
- **Voter Moved Out of State:** The voter responded to the notice and confirmed that they moved outside of Pennsylvania.

Figures in this section are representative only of actions taken on or before December 31, 2025, as recorded by counties in the SURE system. If additional responses to notices were received after that date, they will not be represented in the below point-in-time data.

## 2025 Five-Year Notice Responses [1]

The Five-Year Notice (FYN) is a statutorily required, one-step mailing process. It is sent via forwardable mail. The purpose of this notice is to contact voters who have not had any activity on their record and have not voted within the past five years. Upon generation of this notice, the voter's record remains on the rolls but is updated to *Inactive* status for a statutorily defined period. If the voter does not take any action with respect to their record or does not vote before the passage of this period, the voter's record is cancelled in SURE. The FYN provides an opportunity for the voter to respond, which results in activity that allows the county to reinstate the registrant to *Active* status. Upon a return to *Active* status, the voter record is no longer on track to be cancelled.




Figure 5: 2025 Five-Year Notice Summary

Overall, approximately 3,590 voters who were mailed FYNs voted, re-registered, or took some action reinstating them to *Active* status after the notice was mailed out. Appendix D1 represents the activity recorded by counties on Five-Year Notice mailings.

[1] Because generating an FYN inactivates the voter, it is not necessary for county officials to record non-responses. Thus, the figures for the results of the FYN mailings presented in this section (and in Appendix D1) may not reconcile with the total number of FYNs mailed.

## 2025 NCOA Notice Summary[2]

The NCOA Notice is a statutorily required two-step mailing process. The notices in each step of the process are sent via forwardable mail to the address of registration. The first mailing, based on data received from the U.S. Postal Service (USPS) through its National Change of Address Program, is a notice which requires the voter to specify whether they have moved. Then, depending on their response, county officials update their records accordingly. These notices provide an opportunity for the voter to confirm their address or provide an update with their updated information to county officials.

Following the initial NCOA Notice mailing, county officials send a second notice to voters who did not respond to the first mailing, or where the initial NCOA notice was returned as undeliverable. This second notice is commonly referred to as the Address Verification Notice (AVN). With the mailing of the AVN, the record is marked *Inactive*, triggering a waiting period before the voter record can be removed from the registration rolls. The period lasts until two federal general elections have passed. If the voter takes an action to update their record or votes within the waiting period, the voter record is returned to *Active* status, and the voter record is no longer scheduled for cancellation. But if, for example, a voter was marked as *Inactive* in 2025 during list maintenance activities, and they do not make any changes on their record or vote, the voter would be removed after the 2028 general election. Appendix D2 represents the activity recorded by counties on NCOA mailings.

---

[2] The SURE system allows counties to queue an Address Verification Notice (AVN) for mailing even if the county has not marked the NCOA record as a non-response. Thus, the figures for the results of NCOA Notice mailings presented in this section (and in Appendix D2) may not reconcile with the total number of NCOA Notices mailed. For information on AVNs, see the section titled 2025 Address Verification Notices (AVNs), below.




Figure 6: 2025 NCOA Notice Summary

## 2025 ERIC Duplicate Notices[3]

As part of the Department's membership in the Electronic Registration Information Center (ERIC), it receives and distributes data on potential duplicate voter records to county officials. Because ERIC is a consortium of member states, and because there is no national voter registration database, ERIC is in a unique position to compare, without access to personally identifiable information, the verified data provided by member states to locate records of voters who may be potentially registered in more than one state. It also provides a report on voters who may be registered in more than one Pennsylvania county.

These pairs of voter records are identified for further review by county officials, who determine whether the same person is potentially registered in more than one jurisdiction.

[3] Because generating an ERIC Duplicate Notice inactivates the voter, it is not necessary for county officials to record non-responses. Thus, the figures for the results of the ERIC Duplicate Notice mailings presented in this section (and in Appendix D3) may not reconcile with the total number of ERIC Duplicate Notices mailed.

If the county identifies the registrant as potentially duplicated in another jurisdiction, a notice is sent to the voter's address on record.

During the 2025 calendar year, Pennsylvania counties mailed 6,497 notices of potential duplication.

The chart below (Figure 7) represents a summary of the mailing responses. Appendix D3 represents the activity recorded by counties on ERIC Duplicate Notice mailings. After review, county officials update the voter's record to reflect the voter's response (or lack thereof) to the notice.




Figure 7: 2025 ERIC Duplicate Notice Summary

## 2025 ERIC In-State Moves

In addition to comparing voter registration information, ERIC provides a report with data comparing voter registration information with PennDOT information to identify voters who may have moved without updating their voter registration. This report is also provided to counties.

The process for determining whether this new information accurately reflects a voter's current status involves a one-step mailing procedure. Once the notice is queued and confirmed, the affected voter records are updated to *Inactive* status. Depending on the response – or nonresponse – to the mailer, the voter's record may be updated to *Active*,

remain in *Inactive* status, or be *Cancelled*. During 2025, approximately 42,038 notices were mailed to voters. Appendix D4 represents the activity recorded by counties on ERIC In-State Move mailings.




Figure 8: 2025 ERIC In-State Move Summary

## 2025 ERIC Out-of-State Moves

The data for potential out-of-state updates or moves are provided by ERIC. This process captures information where a voter within Pennsylvania appears to match another record from out of state that contains newer information. This may be an indication that the voter no longer resides in the Commonwealth. Therefore, any identified registrants are sent a notice to confirm their move or affirm their status as a Pennsylvania voter.

This process involves a single mailing from the county election office. Once the notice is prepared for sending, the affected voter records are updated to *Inactive* status. Depending on the response to the mailer or non-response, the voter's record may be updated to *Active*, remain in *Inactive* status, or be *Cancelled*. During 2025, approximately 27,331 notices were mailed to voters. Appendix D5 represents the activity recorded by counties in the SURE system on ERIC Out-of-State Move mailings.




Figure 9: 2025 ERIC Out-of-State Moves Summary

## 2025 Address Verification Notices (AVNs)[4]

An additional list maintenance tool is the AVN, which is used in multiple circumstances to determine if a voter is still eligible to vote at their documented address. In addition to the activities described above with respect to voters who have potentially moved, counties send AVNs to *Inactive* voters when an initial contact attempt is returned as undeliverable. For example, if the USPS returns a voter identification card to the county because it was undeliverable to the address associated with the registrant, an AVN may be sent to the voter. In 2025, county officials mailed approximately 182,874 AVNs to voters. The chart below (Figure 10) summarizes the responses received by county officials as of December 31, 2025. Appendix D6 represents the activity recorded by counties on AVN mailings.

[4] Because generating an AVN inactivates the voter, it is not necessary for county officials to record non-responses. Thus, the figures for the results of the AVN mailings presented in this section (and in Appendix D6) may not reconcile with the total number of AVNs mailed.




Figure 10: 2025 AVN Summary

## PennDOT Change of Address Summary

In addition to registering to vote through more traditional means such as paper or online voter registration, the National Voter Registration Act of 1993 (NVRA) requires states to incorporate voter registration opportunities into the driver's license application process at state motor vehicle authorities. As part of that process, voters have an opportunity to update their voter registration with their latest information to ensure the voter registration rolls are accurate.

During the 2025 calendar year, approximately 492,142 voter address change applications were processed by county officials. Appendix D7 represents the activity recorded by counties in the SURE system on PennDOT change of address transactions.




Figure 15: 2025 PennDOT Change of Address Summary

## Voter Registration Cancellations

During 2025, the SURE system recorded approximately 338,295 voter registration cancellations. When a voter registration is cancelled, the record is tagged in the SURE system to identify the reason for cancellation. The record of an *Active* voter may be cancelled if, for example, the voter confirms they have moved out of state.

The records of *Inactive* voters, including those marked *Inactive* following the list maintenance activities described above, must be cancelled, under federal law, if the voters have failed to vote in two consecutive general (even-numbered year) elections. Table 3 represents the total number of cancellations by reason for the state. Figures in this section are representative of actions taken on or before December 31, 2025, as recorded by the counties in the SURE system. See Appendix D for details broken out by county.

| Classification | Voter Status at Cancellation | Description | 2025 Total |
|---|---|---|---|
| Voter's Request | Active | Registration cancelled at the request of the voter. | 6,128 |
| Voter's Death | Active | Registration cancelled when the county is notified of a voter's death via state or local officials. | 99,846 |
| Other Move Confirmed | Active | The voter confirmed that they have moved from the address listed on their voter record to a different address through a change of address process other than PennDOT. | 41,228 |
| Voter Removal Programs | Active | Voter confirmed they no longer live at the current address when sent an NCOA mailing. | 1,846 |
| Canvass | Active | The county visited the address on record to confirm the voter no longer lives there. | 46 |
| PennDOT Move Confirmed | Active | Voter submitted a PennDOT transaction and provided information that the voter has changed their address. | 110,761 |
| Duplicate Registration | Active | The county or ERIC program identified that the registration is a duplicate. | 355 |
| Voter Not Qualified | Active | The county identified that the voter was not qualified to be registered. | 120 |

| | | | |
|---|---|---|---|
| Voter's Request | Inactive | Registration cancelled at the request of the voter. | 1,944 |
| Voter's Death | Inactive | Registration cancelled when the county is notified of a voter's death via state or local officials. | 6,199 |
| Other Move Confirmed | Inactive | The voter confirmed that they have moved from the address listed on their voter record to a different address in PA. | 13,851 |
| Voter Removal Program | Inactive | Voter responded to a voter removal program notice while they were inactive confirming they no longer live at the current address, or they failed to respond and did not have any activity for a period of 2 federal general elections. | 44,980 |
| PennDOT Move Confirmed | Inactive | Voter submitted a PennDOT transaction and provided information that the voter has changed their address outside of PA. | 10,828 |
| Canvass | Inactive | The county visited the address on record to confirm the voter no longer lives there. | 57 |
| Duplicate Registration | Inactive | The county or ERIC program identified that the registration is a duplicate. | 89 |
| Voter Not Qualified | Inactive | The county determined through means other than list maintenance activities that the voter was not qualified, or is no | 17 |

| | | | |
|---|---|---|---|
| | | longer qualified, to be registered. (For example, a voter's registration was successfully challenged). | |

Table 3: Total Number of Cancellations by Reason

## Common Active Voter Registration Cancellations by Voter Status and Year




| | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|
| Voter's Request | 3,859 | 4,560 | 4,239 | 13,761 | 6,128 |
| Voter's Death | 110,927 | 89,529 | 93,593 | 85,056 | 99,846 |
| Other Move Confirm | 22,127 | 44,440 | 43,316 | 88,262 | 41,228 |
| Canvass | 16 | 27 | 13 | 78 | 46 |
| PennDOT Move Confirmed | 114,754 | 103,436 | 107,820 | 92,247 | 110,761 |

Voter's Request · Voter's Death · Other Move Confirm · Canvass · PennDOT Move Confirmed

Figure 12: Common Active Voter Registration Cancellations

Appendix D8 represents the county-level summary of active cancellations with reasons.

# Appendix D

This contains a summary of data relative to list maintenance activities in the counties between January 1, 2025, and December 31, 2025

Appendix D1 through D7 summarizes total voter list maintenance notifications sent and voter responses received through December 31, 2025. D8 and D9 summarize voter cancellations.

1. Five-Year Notice Summary
2. National Change of Address Notice Summary
3. Duplicate Notice Summary
4. In-State Moves Notice Summary
5. Out-of-State Moves Notice Summary
6. Address Verification Notice Summary
7. PennDOT Change of Address Processing Summary
8. Active Cancellations
9. Inactive Cancellations