**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**CIVIL ACTION NO. ________________**

---

**UNITE 4 FREEDOM, INC.,**
**GREGORY STENSTROM, PRO SE, and**
**HARRY HAURY, PRO SE,**

*Plaintiffs,*

v.

**AL SCHMIDT, in his official capacity as**
**Secretary of the Commonwealth of Pennsylvania,**
*Defendant.*

---

# EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

Plaintiffs Unite 4 Freedom, Inc. (U4F), Gregory Stenstrom, and Harry Haury move under Federal Rule of Civil Procedure 65 for three separately grantable tiers of interim relief preserving the Court's ability to decide this original NVRA enforcement action and compelling the public inspection Congress required. Tier One preserves specified existing records, requires sworn custodian and retention information, and sets an expedited adversarial schedule. Tier Two requires prompt inspection or rolling production of the readily identifiable first tranche. Tier Three requires a verified category-by-category reconciliation and corrective-status report identifying what Defendant reviewed, what was determined, what remains unresolved, the supporting records, and the

timetable and safeguards governing lawful individualized correction. After notice and hearing, the requested preliminary injunction requires sequenced inspection and continued verified reporting.

Plaintiffs seek the temporary restraining order on notice and do not request ex parte relief. Each tier is separately grantable. Tier One should issue even if the Court denies or defers Tier Two or Tier Three; Tier Two should issue even if the Court reserves Tier Three for the preliminary-injunction hearing. The Court may grant any independently supportable tier, subpart, record category, or lesser relief even if it denies or defers broader relief. No tier asks the Court to presume that every flagged instance establishes ineligibility or an unlawful vote, remove any voter, alter an election rule or deadline, restrain certification, or finally adjudicate Plaintiffs' corrective claims under §§ 20507(a)(4) and (b). Tier Three instead requires Defendant to place its review, explanations, dispositions, unresolved categories, safeguards, and corrective timetable on the judicial record.

---

**In support, Plaintiffs state:**

1. Since 2020, U4F and Stenstrom have repeatedly requested Pennsylvania election records and implementation documentation, analyzed official voter-registration and voter-history data, published Pennsylvania findings, communicated those findings to responsible officials, and sought investigation and correction. The attached record is incorporated throughout this Motion: the August 18 Notice and appendices (Ex. A, compiled PDF pp. 1-24); Pennsylvania's response (Ex. B, pp. 25-29); the Tampering Report and Scorecard (Exs. C-D, pp. 30-33); authenticated summaries of the complete native CSVs (Exs. E-F, pp. 34-43); the request-and-response index

(Ex. G, pp. 44-46); and Pennsylvania's official report excerpts (Ex. H, pp. 47-65). Section 1 contains 2,865,011 flagged category instances across 2,555,665 unique registration identifiers; Section 2 contains 1,668,861 flagged instances across 1,527,639 unique identifiers associated with records reflecting a vote in the 2024 General Election. Ex. E, pp. 35-38; Ex. F, pp. 40-43.

2. Defendant received the Notice and supporting electronic materials on August 21, within 120 days before the November 3, 2026 federal election. The Notice identified the asserted violations, official Pennsylvania data analyzed by U4F, exact record-level categories, requested implementation records, preservation demand, and corrective action. Ex. A, pp. 2-13, 15-24. The CSVs identify flagged entries by category, subcategory, registration identifier, name fields, status, and county; Exhibits E and F authenticate the complete native files by exact filename, byte size, row count, and SHA-256 hash and identify the public location for byte-for-byte identical copies. Ex. E, pp. 35-38; Ex. F, pp. 40-43. The twenty-day correction period expired without inspection.

3. On September 10, the Department, through Assistant Counsel Michelle Rupp, stated that she had reviewed the Notice and included flash drive, referred to more than 1.5 million implicated records, and addressed exact categories involving post-cutoff processing, legacy migration, default dates, protected placeholders, addresses, confirmation notices, and cancellations. Ex. B, pp. 26-29. That response establishes actual notice, substantive review, and comprehension of the systems, categories, and programs at issue.

4. The Department nevertheless produced no responsive record, offered no inspection, identified no custodian, and proposed no inspection

schedule. Ex. B, pp. 26-29; Ex. G, pp. 44-46. Its invitation to submit another request did not correct the continuing inspection violation or restart Congress's statutory period.

5. Plaintiffs have not sent a second statutory notice and are not requesting another administrative debate or cure period. The litigation schedule particularizes and narrows the same implementation records demanded in the August 18 notice; it does not withdraw that notice, identify a new violation, or restart the completed period.

6. Appendix B compares successive official data snapshots and documents changes between them. Ex. A, pp. 20-24; Ex. C, pp. 30-31. Defendant likewise stated that many implicated records had likely been updated since the January 13, 2025 source file. Ex. B, p. 28. Pennsylvania's live system continues processing additions, status changes, corrections, exceptions, and election-related transactions, while Pennsylvania's own annual report confirms ongoing statewide and county list-maintenance operations and resulting records. Ex. H, pp. 51-65. Without preservation of the underlying histories, logs, extracts, snapshots, and disposition records, later production of a then-current database will not necessarily permit reconstruction of the records and processes existing when notice was served. The proposed order permits verified preservation copies and does not interrupt lawful voter-registration activity.

7. U4F was itself a requester and had an established Pennsylvania program before the denial. Founded and led by Harry Haury, U4F's Chair and President, it analyzed official registration and voter-history data, published Pennsylvania Scorecards and Tamper Reports, maintained supporting datasets, presented findings to

election officials, and sought investigation and correction. Stenstrom is a registered Pennsylvania voter, personal requester, and participant with personal knowledge of that work.

8. U4F and Stenstrom have already published Pennsylvania findings and contacted officials. Before November 3, they will continue that established work by testing Defendant's explanations, completing and updating Pennsylvania analyses, presenting record-specific findings to State and county officials, notifying affected voters where lawful and practicable, and seeking administrative correction of verified errors. Complete nonproduction prevents reliable completion of those activities, and later inspection cannot restore the lost pre-election opportunity.

9. Plaintiffs request the expressly tiered relief stated in the proposed temporary restraining order: Tier One preservation, sworn custodian and retention information, and an expedited show-cause schedule; Tier Two limited inspection or rolling production of the readily identifiable first tranche; and Tier Three a verified category-by-category reconciliation and corrective-status report. Each tier is separately grantable. After hearing, Plaintiffs request sequenced inspection, continued verified reporting, and a category-specific timetable for lawful individualized investigation and correction of verified errors.

**Respectfully submitted,**



**Gregory Stenstrom, Pro Se**
1541 Farmers Lane
Glen Mills, PA 19342
856-264-5495
gregorystenstrom@gmail.com

September 28, 2026



**Harry R Haury, Pro Se**
167 LAMP & LANTERN VILLAGE,
Suite 194
CHESTERFIELD, MO 63017
314-498-2569
harryhaury@protonmail.com

**/s/ Renee Mazer**
Renee Mazer
PA Bar No. 57666
191 Presidential Boulevard, Apt. 419
Bala Cynwyd, PA 19004
(484) 716-9619
reneemazer@gmail.com
Counsel for Plaintiff Unite 4 Freedom, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CIVIL ACTION NO. __________________**

---

**UNITE 4 FREEDOM, INC.,**
**GREGORY STENSTROM, PRO SE, and**
**HARRY HAURY, PRO SE,**

*Plaintiffs,*

v.

AL SCHMIDT, in his official capacity as
Secretary of the Commonwealth of Pennsylvania,
*Defendant.*

---

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

## I. Question Presented

**Whether Defendant, after years of related record requests, statutory notice identifying 2,865,011 record-level conditions across 2,555,665 unique registration identifiers, delivery and review of the underlying electronic evidence, and a category-specific response acknowledging more than 1.5 million implicated records, may continue withholding every existing non-exempt implementation record while the present pre-election opportunity for meaningful inspection expires.**

## II. Nature of the Requested Relief

10. Section 20507(i) supplies the controlling rule: Pennsylvania must maintain for at least two years and make available for public inspection all non-exempt records concerning implementation of voter-list-maintenance programs and activities.[1]

11. The temporary restraining order is limited to preserving enumerated existing records and setting an expedited adversarial schedule. It compels no production and changes no election rule, deadline, registration, ballot, count, or certification.

12. The preliminary injunction sequences inspection. The initial production consists of written list-maintenance procedures; data dictionaries and code or reason-code tables; migration, default-value, and placeholder specifications; and confirmation-notice lists, responses, and dispositions. Existing transaction, change-history, exception, and disposition records for the noticed categories follow through rolling production, supervised inspection, or an identified protective procedure. The order does not adjudicate Counts II or III or direct voter removals or corrections.

## III. Record

### A. Notice and Uncorrected Denial

13. The August 18 Notice was not Plaintiffs' first effort to obtain Pennsylvania election-administration records. Since 2020, U4F and Stenstrom have requested records and supporting documentation

1 52 U.S.C. § 20507(i)(1)–(2).

concerning voter-registration administration, list maintenance, record-level changes, governing procedures, audit and transaction histories, and the information necessary to explain conditions appearing in official Pennsylvania records. The complete Section 1 CSV contains 2,865,011 flagged instances across 2,555,665 unique registration identifiers. Ex. E, pp. 35-38. Although the Appendix A summary table displayed six categories totaling 2,704,791, Exhibit E supplies the five omitted displayed categories totaling 160,220 and reconciles exactly to 2,865,011. Ex. A, p. 17; Ex. E, pp. 35-36. The complete Section 2 CSV contains 1,668,861 flagged instances across 1,527,639 unique identifiers associated with records reflecting a vote in the 2024 General Election. Ex. F, pp. 40-43. Plaintiffs published their findings, communicated them to officials, and sought investigation and correction.

14. The August 18 Notice formalized and particularized those continuing requests under §§ 20507(i) and 20510(b). Ex. A, pp. 1-24. Defendant received it and the accompanying electronic materials on August 21. On September 10, Defendant admitted that counsel reviewed the Notice and flash drive, referred to more than 1.5 million records, supplied category-specific explanations, stated that counties had sent approximately 437,599 list-maintenance notices and cancelled approximately 338,295 registrations, and objected that the request was insufficiently specific. Ex. B, pp. 26-29. Pennsylvania's official annual report independently describes the ongoing list-maintenance programs and their resulting notice, response, status, cancellation, and county-level records. Ex. H, pp. 51-65.

15. Yet the response made no record available, identified no custodian, proposed no inspection schedule, and did not state that the requested

categories were nonexistent. Ex. B, pp. 26-29; Ex. G, pp. 44-46. Defendant's discussion of the precise categories and source data establishes actual comprehension. Its general explanations do not reconcile the identified records and are not a substitute for inspection of the procedures, definitions, histories, notices, and dispositions Congress made public. Its invitation to submit another request neither corrected the violation nor extended the statutory period.

---

### B. Particularized Inspection Schedule

16. The first tranche narrows records expressly demanded in the Notice. The Notice requested written procedures and implementation records; documentation of additions, changes, removals, and corrections; responsible offices and authority; confirmation-notice records; transaction logs and change-history tables; and a category-by-category disposition. Ex. A, pp. 7-12. Defendant answered the corresponding subjects of migration, defaults, placeholders, notices, cancellations, and post-cutoff processing. Ex. B, pp. 27-29. Exhibit G maps each request to the response and resulting nonproduction. Ex. G, pp. 44-46. For any category not maintained by Defendant, the proposed order permits a sworn status response identifying the custodian, legal basis for withholding, or applicable retention and disposition facts.

---

## IV. Governing Standard

17. Plaintiffs must show a reasonable probability of success and that irreparable injury is more likely than not absent relief; the Court also considers harm to Defendant and the public interest. Reilly v.

City of Harrisburg, 858 F.3d 173, 176, 179 (3d Cir. 2017); Amalgamated Transit Union Local 85 v. Port Authority of Allegheny County, 39 F.4th 95, 102-03 (3d Cir. 2022). A reasonable chance of success is not necessarily more likely than not. Reilly, 858 F.3d at 179.

18. Plaintiffs seek relief on notice and request an expedited adversarial schedule. A short preservation order maintains the Court's ability to decide the preliminary-injunction motion on an intact record; the sequenced inspection order restores the statutory availability of existing records without changing election administration.

19. Each proposed order states its reasons, terms, and required acts specifically and binds only persons within Rule 65(d)(2).[2]

---

## V. Argument

### A. The Statute Requires Inspection of the Defined First Tranche

20. Section 20507(i) mandates maintenance and public inspection of all non-exempt records concerning implementation of programs and activities conducted to ensure accurate and current official voter lists; it expressly includes confirmation-notice records.

21. Persuasive circuit authority holds that § 20507(i) reaches completed voter-registration applications and electronic statewide voter files reflecting additions and changes made through voter-list registration and maintenance activity. Project Vote/Voting for America, Inc. v.

2Fed. R. Civ. P. 65(d)(1)–(2) (requiring an injunction to state its reasons and terms specifically, describe the restrained or required acts in detail, and bind only specified persons with actual notice).

Long, 682 F.3d 331, 335-36 (4th Cir. 2012); Public Interest Legal Foundation, Inc. v. Bellows, 92 F.4th 36, 46-48 (1st Cir. 2024). These decisions are persuasive rather than controlling in this Circuit.

22. The Third Circuit's Pennsylvania PILF decision dismissed for lack of standing and did not decide § 20507(i)'s substantive scope. Public Interest Legal Foundation v. Secretary Commonwealth of Pennsylvania, 136 F.4th 456, 465-67 (3d Cir. 2025). It requires a concrete downstream consequence bearing a nexus to an interest protected by the NVRA; Plaintiffs plead and support that nexus here.

23. The initial tranche concerns implementation on its face and is calibrated to the observed data and Defendant's own explanations. Written procedures govern list-maintenance activity; data dictionaries and code or reason-code tables define the fields and dispositions used in the CSV source records; migration, default-value, and placeholder specifications govern the explanations Defendant invoked; and confirmation-notice lists, responses, and dispositions are expressly identified in § 20507(i)(2). Ex. A, pp. 7-12; Ex. B, pp. 27-29; Ex. G, pp. 44-46. Pennsylvania's official report confirms that its statewide and county programs generate these categories of implementation records. Ex. H, pp. 51-65. Existing transaction, change-history, exception, and disposition records then show how identified categories were changed, cancelled, restored, merged, or otherwise resolved.

24. Plaintiffs' § 20507(i) inspection claim does not demand creation of a new database or administrative record. Tier Three separately requests a verified litigation status report identifying Defendant's review, explanations, dispositions, unresolved categories, safeguards, and corrective timetable. If an underlying record is not maintained,

Defendant may state that fact under oath. If another custodian maintains it, Defendant may identify that custodian. If lawful redaction or security treatment is necessary, Defendant may identify the affected fields and propose a protective procedure. None of those circumstances permits withholding undisputed existing, non-exempt implementation records within Defendant's possession, custody, or control.

25. Defendant's response establishes comprehension and access sufficient to address exact categories and acknowledge more than 1.5 million implicated records. Ex. B, pp. 26-29. Plaintiffs' CSVs identify flagged entries by category, subcategory, registration identifier, name fields, status, and county, and their exact hashes permit identity verification. Ex. E, pp. 35-38; Ex. F, pp. 40-43. Plaintiffs do not contend that a flag alone adjudicates voter ineligibility or an unlawful vote. Defendant may contest Plaintiffs' interpretation, but categorical assurances are not inspection, and zero production cannot satisfy the statutory command.

---

**B. The Enforcement Prerequisite Is Satisfied**

26. When a violation occurs within 120 days before a federal election, § 20510(b)(2) permits suit twenty days after written notice if the violation remains uncorrected.

27. Defendant received notice on August 21. Twenty days elapsed without a single record, inspection appointment, identified custodian, or production schedule.

28. The Notice supplied statutes, official datasets, millions of record-level machine-readable entries, defined categories, requested record

types, preservation demands, and corrective action. Ex. A, pp. 1-24; Exs. E-F, pp. 34-43. It also followed years of related Pennsylvania record requests and corrective activity. Defendant's review of the Notice and flash drive and its category-specific response confirm that the Notice enabled investigation. Ex. B, pp. 26-29. The litigation schedule narrows and sequences the same requested records; it is not a new notice and does not require another cure period.

---

C. Stenstrom Has the Concrete Nexus the Third Circuit Found Missing in PILF

29. PILF requires an informational-injury plaintiff to identify a concrete downstream consequence bearing a nexus to an interest protected by the NVRA. 136 F.4th at 464-67. This record supplies two independent paths to standing and identifies the requested information, the activities impaired, the time-sensitive downstream consequences, and their connection to eligible-voter participation and accurate and current Pennsylvania voter lists.

30. U4F was itself a requester and had an established Pennsylvania program before this action. Founded and led by Harry Haury, U4F's Chair and President, it analyzed official registration and voter-history records, generated and published the Pennsylvania Scorecard and Tamper Report, maintained the supporting machine-readable datasets, communicated record-specific findings to officials, and sought investigation and correction. Those activities began years before the present denial and were not created to establish standing.

31. U4F has already published Pennsylvania findings and contacted officials. Before November 3, it will continue that established

program by testing Defendant's explanations, completing and updating pending Pennsylvania analyses, publishing supported record-specific findings, presenting them to State and county officials, and assisting affected voters where lawful and practicable. Complete nonproduction directly impairs those activities; the injury is disruption of established work, not merely litigation expense.

32. Independently, Stenstrom is a Pennsylvania voter and personal requester who has reviewed Pennsylvania election records, participated in publication, contacted responsible officials, and sought investigation and correction since 2020. He will use the requested records to continue comparing official data, present supported findings, notify affected voters where lawful and practicable, and seek administrative correction of verified errors affecting eligible voters.

33. Those activities concern eligible-voter participation and accurate and current Pennsylvania voter lists. Defendant's refusal is the direct barrier, and inspection redresses it.

34. U4F and Stenstrom each allege standing independently sufficient to support the common relief requested by all Plaintiffs.3

---

### D. Loss of the Pre-Election Inspection Opportunity Is Irreparable

35. The injury is the continuing obstruction of established publication, official-contact, voter-assistance, and corrective activities during a finite pre-election period. U4F and Stenstrom have performed those

3Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 52 n.2 (2006).

activities for years and are prepared to continue them upon production. Later disclosure cannot restore the opportunity to evaluate Defendant's explanations and use the information before November 3.

36. Damages are neither requested nor an adequate substitute for lost pre-election participation. The injury becomes complete through the passage of time, not merely through destruction of data.

37. Preservation addresses an additional, record-based risk. Appendix B and the Tampering Report document changes between successive official snapshots. Ex. A, pp. 20-24; Ex. C, pp. 30-31. Defendant stated that many implicated records had likely been updated since the January 13, 2025 source file. Ex. B, p. 28. The live registration system necessarily continues processing transactions before the 2026 election, and Pennsylvania's annual report confirms continuing statewide and county activity. Ex. H, pp. 51-65. Operational histories, exceptions, dispositions, logs, extracts, snapshots, and backups are therefore subject to continuing alteration, rotation, replacement, or expiration in ordinary operations. Preserving the responsive information or a verified preservation copy now is necessary because a later current-state database cannot necessarily reconstruct the state and history of the records when notice was served.

38. A preservation order prevents ordinary system operations from defeating effective relief; focused inspection then remedies the time-sensitive denial without deciding every merits issue.

**E. The Remaining Factors Favor Narrow Statutory Relief**

39. Preservation requires retention only of enumerated existing responsive records or verified preservation copies. The initial inspection tranche prioritizes written procedures, definitions, code tables, specifications, and confirmation-notice records that Defendant's response shows it can identify and that § 20507(i)(2) expressly addresses. Technical histories may follow through rolling production, supervised inspection, or a prompt protective procedure.

40. Plaintiffs accept reasonable redactions, supervised access, sequencing, data-security measures, and reasonable reproduction costs, provided those procedures do not eliminate meaningful inspection of non-exempt records.

41. The proposed orders do not remove a voter, change a registration or ballot deadline, regulate ballot receipt, alter counting, or restrain certification. They leave election administration in place while enforcing a federal inspection right.

42. The public interest favors compliance with Congress's inspection command, preservation of the administrative record, and a prompt merits decision based on evidence rather than untested assurances.

---

**F. A Date-Certain Decision Preserves Effective Judicial Review**

43. The injury is calendar-bound. A ruling after November 3 cannot restore Stenstrom's identified pre-election use of the records.

44. Plaintiffs therefore request dates certain for response, hearing, and decision sufficiently before November 3 to preserve effective district-court relief and meaningful appellate review.

### G. Verified Reconciliation Is Interim Relief and the Corrective Merits Remain Reserved

45. Counts II and III plead corrective claims under §§ 20507(a)(4) and (b). Tier Three does not ask the Court to decide that every flagged identifier is erroneous or ineligible. It requires Defendant to disclose, under oath and category by category, what it examined, what it determined, what records support those determinations, and what remains unresolved.

46. Defendant received the complete machine-readable data, reviewed the Notice and flash drive, and issued category-specific explanations. A verified reconciliation therefore asks Defendant to particularize positions it already elected to take, identify the supporting implementation records, and state the present status of categories affecting more than 2.5 million unique registration identifiers.

47. For each noticed category, the report should state the governing definitions, procedures, and reason codes; the number of unique identifiers reviewed; the number determined lawful, erroneous, corrected, unresolved, or attributable to an identified technical or administrative condition; the basis and supporting records for each disposition; the responsible custodian; the lawful corrective timetable; and the safeguards governing unresolved records in the November 3 election.

48. Requiring that verified account neither removes a voter nor prejudges the merits. It creates the record necessary to distinguish lawful administration from unresolved error and permits any final corrective order to be tailored after inspection and hearing.

49. The Court can therefore grant Tier Three independently, or after Tier Two inspection, without deciding whether any individual registration should be corrected or whether broader list-maintenance relief is warranted. General assurances cannot substitute for a

category-specific sworn response to record-level evidence and a federal statutory notice.

---

## VI. Relief

50. The Court should enter the attached three-tier temporary restraining order. Tier One should preserve the enumerated responsive records, require sworn custodian and retention information, and set an expedited adversarial schedule. Tier Two should require limited inspection or rolling production of the readily identifiable first tranche. Tier Three should require a verified category-by-category reconciliation and corrective-status report. Each tier is independently grantable, and denial or deferral of a higher tier should not preclude a lower tier. Each subpart and record category is likewise severable, and the Court should grant any lesser relief supported by the record. After notice and hearing, the Court should enter the attached preliminary injunction requiring sequenced inspection, continued verified reporting, and category-specific corrective timetables.

---

**Respectfully submitted,**

**Gregory Stenstrom, Pro Se**

1541 Farmers Lane

Glen Mills, PA 19342

856-264-5495

gregorystenstrom@gmail.com

September 28, 2026

**Harry R Haury, Pro Se**
167 LAMP & LANTERN VILLAGE,
Suite 194
CHESTERFIELD, MO 63017
314-498-2569
harryhaury@protonmail.com

**/s/ Renee Mazer**
Renee Mazer
PA Bar No. 57666
191 Presidential Boulevard, Apt. 419
Bala Cynwyd, PA 19004
(484) 716-9619
reneemazer@gmail.com
Counsel for Plaintiff Unite 4 Freedom, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**CIVIL ACTION NO. ________________**

---

**UNITE 4 FREEDOM, INC.,**
**GREGORY STENSTROM, PRO SE, and**
**HARRY HAURY, PRO SE,**

*Plaintiffs,*

v.

**AL SCHMIDT, in his official capacity as**
**Secretary of the Commonwealth of Pennsylvania,**

*Defendant.*

---

**PROPOSED THREE TIER TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

---

AND NOW, this ____ day of __________ 2026, upon consideration of Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction, the supporting memorandum, the Declarations of Gregory Stenstrom and Harry R. Haury, and the record presented, it is ORDERED that each tier is separately grantable, Tier One is not conditioned on Tier Two or Tier Three, Tier Two is not conditioned on Tier Three, and every subpart and record category is severable:

TIER ONE - MINIMUM PRESERVATION AND SCHEDULING RELIEF

1. Defendant and Defendant's officers, agents, employees, contractors, and other persons bound under Federal Rule of Civil Procedure 65(d)(2) who receive actual notice shall preserve, or create and retain a verified preservation copy of, existing records responsive

to the August 18 Notice (Ex. A) within Defendant's possession, custody, or control, and shall suspend ordinary deletion, overwriting, alteration, rotation, or expiration of: (a) written voter-list-maintenance procedures; (b) voter-registration data dictionaries and code or reason-code tables; (c) conversion, migration, default-value, and placeholder specifications; (d) confirmation-notice lists, response records, and disposition records; (e) transaction and change histories for registration status, address, notice, cancellation, restoration, merge, and reason codes; (f) exception, duplicate-review, audit, and disposition records for the noticed categories summarized in Exhibits E and F; and (g) extracts, snapshots, exports, and backups necessary to preserve those responsive records from August 18, 2024 through the date of this Order.

2. Within two business days after service, Defendant shall identify the responsible custodians, systems, repositories, and ordinary retention periods for each category in paragraph 1 and confirm in a sworn declaration the persons, agencies, counties, contractors, or vendors to whom the preservation direction was transmitted, the date transmitted, and the categories each controls.
3. Defendant shall respond to the preliminary-injunction motion by ___________ at ______. Plaintiffs may reply by ___________ at ______. Defendant shall show cause at a hearing on ___________ at ______ why the proposed preliminary injunction should not issue.

TIER TWO - ADDITIONAL LIMITED INSPECTION RELIEF

4. Within five business days after service, Defendant shall begin rolling electronic production or supervised inspection of existing: (a) written voter-list-maintenance procedures; (b) voter-registration data dictionaries and code or reason-code tables; (c) conversion, migration, default-value, and placeholder specifications; and (d) confirmation-notice lists, response records, and disposition records. If Defendant asserts that lawful redaction, security treatment, or a protective procedure is required, Defendant shall identify the affected fields and legal basis and propose the least restrictive procedure permitting

meaningful inspection. The Court's decision whether to grant, deny, or defer Tier Two does not affect Tier One.

TIER THREE - VERIFIED RECONCILIATION AND CORRECTIVE STATUS

5. Within seven calendar days after service, Defendant shall file a verified category-by-category response to the record conditions summarized in Exhibits E and F. For each category, the response shall state: (a) the governing definitions, procedures, and reason codes; (b) the number of unique registration identifiers reviewed; (c) the number determined to be lawful, erroneous, corrected, unresolved, or attributable to an identified conversion, migration, placeholder, privacy, clerical, duplicate, merge, death, change-of-residence, or other condition; (d) the factual and technical basis and supporting record categories for each disposition; (e) the responsible custodian; (f) the number for which Defendant cannot presently identify an explanation or disposition; (g) the timetable and procedure for lawful individualized investigation and correction of verified errors; and (h) the safeguards governing treatment of unresolved records in the November 3, 2026 federal election. Defendant shall show cause why additional preservation, inspection, reporting, or other narrowly tailored relief should not issue for any category that cannot presently be reconciled. The Court's decision whether to grant, deny, or defer Tier Three does not affect Tier One or Tier Two.

6. The parties shall confer immediately regarding preservation, inspection, and reporting logistics and promptly present any unresolved issue to the Court. Nothing in this Order requires Defendant to presume that a flagged instance establishes ineligibility, suspend lawful voter-registration activity, disable a production system, conduct a systematic removal program during the ninety-day period, restore information already deleted before notice of this action, or retain duplicative copies after a verified preservation copy has been secured.

7. This temporary restraining order shall expire fourteen days after entry unless extended by consent or further order stating the reasons for extension.
8. Security under Federal Rule of Civil Procedure 65(c) is set at $100.

BY THE COURT:

__________________________________

United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**CIVIL ACTION NO. ________________**

---

**UNITE 4 FREEDOM, INC.,**
**GREGORY STENSTROM, PRO SE, and**
**HARRY HAURY, PRO SE,**

*Plaintiffs,*

v.

**AL SCHMIDT, in his official capacity as**
**Secretary of the Commonwealth of Pennsylvania,**
*Defendant.*

---

## PROPOSED PRELIMINARY INJUNCTION

---

AND NOW, this ____ day of __________ 2026, after notice and a hearing, the Court finds that Plaintiffs have shown a reasonable probability of success on their § 20507(i) claim; that loss of U4F's and Stenstrom's identified pre-election use of the records is irreparable; that sequenced inspection imposes limited administrative burden; and that the public interest favors enforcement of the NVRA without altering election rules or deadlines. It is ORDERED:

1. Within two business days, Defendant shall serve a sworn category-by-category record status keyed to the August 18 Notice and Exhibit G, identifying the responsible custodian and whether each record category is maintained, available electronically, available for

supervised inspection, withheld, maintained by another known custodian, or no longer available. Within five business days, Defendant shall begin rolling electronic production or supervised inspection of existing: (a) written voter-list-maintenance procedures; (b) voter-registration data dictionaries and code or reason-code tables; (c) conversion, migration, default-value, and placeholder specifications; and (d) confirmation-notice lists, response records, and disposition records.

2. Defendant shall next produce or make available for supervised inspection existing transaction, change-history, exception, and disposition records sufficient to show how the categories identified in the August 18 notice were classified, changed, noticed, cancelled, restored, merged, or otherwise resolved. If Defendant asserts that lawful redaction, security treatment, or a protective procedure is required, Defendant shall identify the affected fields and legal basis in the sworn status and propose the least restrictive procedure permitting meaningful inspection.

3. Within seven calendar days, Defendant shall file a verified category-by-category reconciliation and corrective-status report containing the information required by Tier Three paragraph 5 of the temporary restraining order. The report shall separately identify every category Defendant cannot presently reconcile and shall state the number of affected unique registration identifiers, why reconciliation has not occurred, the records necessary to complete it, the lawful corrective timetable, and the safeguards governing treatment of those records in the November 3, 2026 federal election.

4. The parties shall confer immediately regarding lawful redactions, protected-voter information, data security, native formats,

sequencing, reporting, and reasonable reproduction costs. Any unresolved issue shall be presented promptly to the Court and shall not delay production, inspection, or reporting concerning undisputed matters.

5. Except for the verified litigation status and reconciliation reports expressly ordered, this Order does not require creation of a new administrative record or database, removal or correction of any voter, alteration of an election rule or deadline, or disclosure of information exempt from § 20507(i).
6. Defendant shall complete the initial tranche in paragraph 1 within ten business days and shall complete the records described in paragraph 2 within fifteen business days unless the Court orders otherwise for good cause shown in a category-specific sworn declaration.
7. The Court retains jurisdiction to resolve disputes concerning scope, redactions, security, format, reporting, reconciliation, or compliance on an expedited basis.
8. This preliminary injunction remains effective until final judgment or further order.
9. The $100 security posted under Federal Rule of Civil Procedure 65(c) remains sufficient.

BY THE COURT:

____________________________________

United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**CIVIL ACTION NO. _________________**

---

**UNITE 4 FREEDOM, INC.,**
**GREGORY STENSTROM, PRO SE, and**
**HARRY HAURY, PRO SE,**

*Plaintiffs,*

v.

**AL SCHMIDT, in his official capacity as**
**Secretary of the Commonwealth of Pennsylvania,**
*Defendant.*

---

## CERTIFICATE OF NOTICE

---

I certify that on September 28, 2026, the foregoing Emergency Motion for Temporary Restraining Order and Preliminary Injunction, supporting memorandum, Declarations of Gregory Stenstrom and Harry R. Haury, proposed temporary restraining order, proposed preliminary injunction, and related papers were provided by electronic mail upon Assistant Counsel who answered the NVRA notice for Defendant:

Michelle Rupp
Assistant Counsel
Governor's Office of General Counsel
Office of Chief Counsel, Pennsylvania Department of State
306 North Office Building
Harrisburg, Pennsylvania 17120-0102
mirupp@pa.gov

Gregory Stenstrom

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITE 4 FREEDOM, INC.,<br>GREGORY STENSTROM, PRO SE, and<br>HARRY HAURY, PRO SE,<br><br>Plaintiffs,<br><br>v.<br><br>AL SCHMIDT, in his official capacity as<br>Secretary of the Commonwealth of Pennsylvania,<br><br>Defendant. | **CIVIL ACTION NO.**<br><br>____________________ |

**DECLARATION OF HARRY R. HAURY IN SUPPORT OF VERIFIED COMPLAINT AND EMERGENCY MOTION**

I, Harry R. Haury, declare as follows:

1. I am an adult United States citizen and a Plaintiff in this action. I am the founder, Chair, and President of Unite 4 Freedom, Inc. (U4F), a national nonprofit election-integrity organization. I make this declaration from personal knowledge and from U4F records maintained under my direction. If called as a witness, I could and would testify competently to these facts.
2. U4F analyzes official voter-registration and voter-history records, publishes state-specific Election Validity Scorecards and Vote Tampering Reports, maintains supporting machine-readable datasets, communicates record-specific findings to election officials, and seeks inspection, investigation, reconciliation, and lawful correction.
3. I direct U4F's multistate election-data analysis, publication, record-inspection, statutory-notice, and official-communication work. U4F has conducted NVRA notice activity in approximately thirty-five States, including Pennsylvania.
4. Before the Department's September 10, 2026, response and before this action, U4F had established and was conducting a Pennsylvania program of analyzing official statewide voter-registration and voter-history data, maintaining supporting datasets, publishing Pennsylvania findings, communicating those findings to election officials, and seeking investigation, reconciliation, and correction. Those activities were not created for this litigation.
5. On August 18, 2026, I signed and submitted, for U4F and for myself, U4F's written Notice of Violations and Demand for Corrective Action to Pennsylvania officials under 52 U.S.C. §

20510(b). Gregory Stenstrom also joined that Notice. A true and correct copy of the Notice and its appendices is attached as Exhibit A.

6. The August 18 Notice identified the asserted statutory violations, the official Pennsylvania datasets analyzed by U4F, recurring record categories, and the existing implementation records requested for inspection. U4F supplied its Pennsylvania Scorecard, Vote Tampering Report, appendices, and record-level machine-readable data on electronic media with the Notice.
7. On September 10, 2026, I received the written response sent by Assistant Counsel Michelle Rupp on behalf of the Pennsylvania Department of State. A true and correct copy is attached as Exhibit B. The response stated that counsel reviewed U4F's Notice and the included flash drive, discussed the source data and several specific categories identified by U4F, and referred to more than 1.5 million implicated voter-registration records.
8. The Department's response did not produce a responsive record, identify a records custodian, offer an inspection, or propose a production schedule. As of the execution of this declaration, U4F has not received the requested Pennsylvania list-maintenance and implementation records.
9. Exhibit E identifies and summarizes the native file named 2024_PA_NVRA_ScorecardSection01(1).csv. That is a true and correct copy of the Section 1 machine-readable file maintained by U4F and supplied with its Pennsylvania Notice. Its SHA-256 hash is ea615a430e017bb5a3dc563c06aa63249a615837b8686152627180c13c4fdbd7.
10. The Section 1 file contains 2,865,011 flagged record-level conditions associated with 2,555,665 unique registration identifiers. The six categories displayed in the Appendix A summary account for 2,704,791 flagged conditions. Exhibit E supplies the complete eleven-category breakdown, including five additional categories totaling 160,220, and reconciles exactly to 2,865,011.
11. Exhibit F identifies and summarizes the native file named 2024_PA_NVRA_ScorecardSection02(1).csv. That is a true and correct copy of the Section 2 machine-readable file maintained by U4F and supplied with its Pennsylvania Notice. Its SHA-256 hash is dde6753eda6988c65a1a0ae3884d947fbf4e06c16ae21e7dbd0ad649bcdf6a11.
12. The Section 2 file contains 1,668,861 flagged record-level conditions associated with 1,527,639 unique registration identifiers connected in U4F's analysis with records reflecting a vote in the 2024 General Election.
13. These figures describe analytical flags and do not mean that U4F has adjudicated the eligibility of 2,865,011 or 1,668,861 separate voters, established that every flagged record is erroneous, or concluded that every identified condition is an individual statutory violation. U4F seeks the State's implementation records to determine which conditions have lawful administrative explanations and which require reconciliation or correction.

14. The native CSV files contain the complete record-level data. Exhibits E and F identify the files by filename, exact byte size, record count, and SHA-256 hash and provide category, subcategory, county, and masked representative-entry summaries derived from the complete native files. U4F has also made byte-for-byte identical copies publicly available at https://cloud.patriot.online/s/9nKYFyYM6BSDDaH . The printed hashes permit the Court, Defendant, and any reviewer to verify that a downloaded or separately delivered copy is identical to the file summarized.
15. U4F seeks Pennsylvania's existing list-maintenance and implementation records so it can test the Department's explanations against the governing procedures and record-level histories, distinguish explainable administrative conditions from unresolved errors, and pursue lawful correction of verified errors affecting eligible voters and accurate voter-registration records.
16. Upon receiving the requested records, I will direct U4F personnel to compare them with the identified Pennsylvania entries; test the Department's explanations concerning post-cutoff processing, migration, default dates, protected placeholders, confirmation notices, and cancellations; identify conditions that can be resolved and those that remain unexplained; present supported findings to responsible State and county officials; request timely correction of verified errors; notify affected voters where lawful and practicable; and update U4F's published Pennsylvania findings.
17. U4F's planned work is directed to accurate and current Pennsylvania voter-registration rolls, the lawful participation of eligible voters, and prevention of erroneous registration classifications. It is not limited to abstract study, generalized advocacy, or the expense of bringing this litigation.
18. The Department's categorical explanations are not a substitute for the requested inspection. Without the governing procedures, definitions, notice and response information, transaction and change histories, exception records, and dispositions, U4F cannot determine on a record-specific basis whether an identified condition is explained, unresolved, or requires correction.
19. The Department stated that many implicated records had likely been updated since the January 13, 2025, source file. U4F's incorporated Vote Tampering Report and Appendix B also compare successive official snapshots and document changes between them. A later current-state file will not necessarily disclose the prior status, sequence, authority, or disposition of a changed record.
20. Prompt preservation is therefore necessary to prevent ordinary alteration, replacement, rotation, or expiration of responsive histories, logs, extracts, snapshots, and disposition records from defeating meaningful inspection. U4F seeks preservation of the responsive information or verified preservation copies without interruption of lawful voter-registration operations.

21. The continued nonproduction prevents U4F from completing the inspection for which it gave statutory Notice and from performing the specific Pennsylvania activities described above before the November 3, 2026, federal election. U4F is prepared to begin that work immediately upon production or supervised inspection.
22. Inspection after November 3 cannot restore the lost opportunity to identify verified errors, present them to responsible officials for timely individualized correction, assist affected eligible voters where lawful and practicable, or use the information during the federal-election period for which U4F requested it. Money damages would not replace that lost opportunity, and U4F does not seek damages in this action.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on September 23, 2026, at Chesterfield, Missouri.



______________________________
Harry R. Haury, Pro Se
Founder, Chair, and President
Unite 4 Freedom, Inc.

167 Lamp & Lantern Village, Suite 194
Chesterfield, MO 63017
314-498-2569
harryhaury@protonmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITE 4 FREEDOM, INC.,<br>GREGORY STENSTROM, PRO SE, and<br>HARRY HAURY, PRO SE,<br><br>Plaintiffs,<br><br>v.<br><br>AL SCHMIDT, in his official capacity as<br>Secretary of the Commonwealth of Pennsylvania,<br><br>Defendant. | **CIVIL ACTION NO.**<br><br>____________________ |

**DECLARATION OF GREGORY STENSTROM IN SUPPORT OF VERIFIED COMPLAINT AND EMERGENCY MOTION**

I, Gregory Stenstrom, declare as follows:

1. I am an adult United States citizen, a resident of Delaware County, a registered Pennsylvania voter, and a Plaintiff in this action. I am also a personal requester of the records at issue and a participant in Unite 4 Freedom, Inc.'s (U4F) Pennsylvania election-data, publication, record-review, official-contact, and corrective work. I make this declaration from personal knowledge. If called as a witness, I could and would testify competently to these facts.
2. Since 2020, I have personally requested Pennsylvania election records and supporting documentation; reviewed and analyzed official voter-registration and voter-history data; published or assisted in publishing Pennsylvania findings; communicated record-specific findings to responsible State and county election officials; and sought investigation, reconciliation, and lawful correction.
3. My Pennsylvania work has also included election observation, service as an authorized representative, administrative proceedings, and litigation concerning election records and administration. These activities began years before the present statutory notice and were not created for this litigation.
4. Before the Department's September 10, 2026 response and before this action, U4F and I had established and were conducting a Pennsylvania program of analyzing official statewide voter-registration and voter-history data, maintaining supporting datasets, publishing Pennsylvania Scorecards and Vote Tampering Reports, communicating findings to election officials, and seeking investigation and correction. I participated personally in those activities and have personal knowledge of them.

5. On August 18, 2026, I joined U4F and Harry Haury in submitting the written Notice of Violations and Demand for Corrective Action to Pennsylvania officials under 52 U.S.C. § 20510(b). I was identified as an aggrieved person and personal requester, and I requested inspection of the existing Pennsylvania records described in the Notice. A true and correct copy of the Notice and its appendices is attached as Exhibit A.
6. I participated in preparing and reviewing the Notice and supporting Pennsylvania materials. The Notice identified the asserted statutory violations, the official Pennsylvania datasets analyzed, recurring record categories, and the existing implementation records requested for inspection. The submission included U4F's Pennsylvania Scorecard, Vote Tampering Report, appendices, and record-level machine-readable data on electronic media.
7. I reviewed the September 10, 2026 written response sent by Assistant Counsel Michelle Rupp on behalf of the Pennsylvania Department of State, which is attached as Exhibit B. The response stated that counsel reviewed the Notice and included flash drive, discussed the source data and several specific categories identified in the submission, and referred to more than 1.5 million implicated voter-registration records.
8. The Department's response did not produce a responsive record, identify a records custodian, offer an inspection, or propose a production schedule. As of the execution of this declaration, I have not received the requested Pennsylvania list-maintenance and implementation records or access to inspect them.
9. I participated in the analysis and review of the Pennsylvania machine-readable files supplied with the Notice. Exhibit E identifies and summarizes the native file named 2024_PA_NVRA_ScorecardSection01(1).csv. Its SHA-256 hash is ea615a430e017bb5a3dc563c06aa63249a615837b8686152627180c13c4fdbd7.
10. The Section 1 file contains 2,865,011 flagged record-level conditions associated with 2,555,665 unique registration identifiers. The six categories displayed in the Appendix A summary account for 2,704,791 flagged conditions. Exhibit E supplies the complete eleven-category breakdown, including five additional categories totaling 160,220, and reconciles exactly to 2,865,011.
11. Exhibit F identifies and summarizes the native file named 2024_PA_NVRA_ScorecardSection02(1).csv. Its SHA-256 hash is dde6753eda6988c65a1a0ae3884d947fbf4e06c16ae21e7dbd0ad649bcdf6a11.
12. The Section 2 file contains 1,668,861 flagged record-level conditions associated with 1,527,639 unique registration identifiers connected in U4F's analysis with records reflecting a vote in the 2024 General Election.
13. These figures describe analytical flags. They do not mean that I or U4F has adjudicated the eligibility of 2,865,011 or 1,668,861 separate voters, established that every flagged record is erroneous, or concluded that every identified condition is an individual statutory violation. The requested implementation records are necessary to determine which conditions have lawful administrative explanations and which remain unresolved or require correction.
14. The native CSV files contain the complete record-level data. Exhibits E and F identify the files by filename, exact byte size, record count, and SHA-256 hash and provide category, subcategory, county, and masked representative-entry summaries

derived from the complete native files. Byte-for-byte identical copies are publicly available at https://cloud.patriot.online/s/9nKYFyYM6BSDDaH. The printed hashes permit verification that a downloaded or separately delivered copy is identical to the file summarized.

15. I seek Pennsylvania's existing list-maintenance and implementation records so I can compare them with the official Pennsylvania data already analyzed, test the Department's explanations against governing procedures and record-level histories, distinguish explainable administrative conditions from unresolved errors, and pursue lawful correction of verified errors affecting eligible voters and accurate voter-registration records.
16. Upon production or supervised inspection, I will compare the requested records with the identified Pennsylvania entries; examine the Department's explanations concerning post-cutoff processing, migration, default dates, protected placeholders, confirmation notices, and cancellations; identify conditions that can be resolved and those that remain unexplained; present supported findings to responsible State and county officials; request timely administrative correction of verified errors; notify affected voters where lawful and practicable; and participate in updating published Pennsylvania findings.
17. My intended use is tied directly to my established work as a Pennsylvania voter, requester, analyst, publisher, and participant in official-contact and corrective activities. It concerns accurate and current Pennsylvania voter-registration rolls, the lawful participation of eligible voters, and prevention of erroneous registration classifications. It is not limited to abstract study, generalized advocacy, or the expense of bringing this litigation.
18. The Department's categorical explanations are not a substitute for inspection. Without the governing procedures, definitions, notice and response information, transaction and change histories, exception records, and dispositions, I cannot determine on a record-specific basis whether an identified condition is explained, remains unresolved, or requires correction.
19. Appendix B to the Notice compares successive official data snapshots and documents changes between them. The Department also stated that many implicated records had likely been updated since the January 13, 2025 source file. A later current-state file will not necessarily disclose the prior status, sequence, authority, or disposition of a changed record.
20. Based on my work with electronic election records, a live voter-registration system continues processing additions, status changes, corrections, exceptions, and election-related transactions. Histories, logs, extracts, snapshots, exception records, and dispositions can be altered, replaced, rotated, overwritten, or expire through ordinary operations. Prompt preservation of the responsive information, or verified preservation copies, is necessary to prevent those ordinary processes from defeating meaningful inspection.
21. The continued nonproduction prevents me from completing the inspection for which I gave statutory Notice and from performing the specific Pennsylvania activities described above before the November 3, 2026 federal election. I am prepared to begin that work immediately upon production or supervised inspection.

22. Inspection after November 3 cannot restore the lost opportunity to identify verified errors, present them to responsible officials for timely individualized correction, assist affected eligible voters where lawful and practicable, or use the information during the federal-election period for which I requested it. Money damages would not replace that lost opportunity, and I do not seek damages in this action.
23. Through the emergency motion, I do not seek removal or correction of any voter, disclosure of ballot choices, alteration of election rules or deadlines, or interference with voting, counting, or certification. I seek prompt preservation and meaningful inspection of existing implementation records while the Court adjudicates the statutory claims.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on September 24, 2026, at Glen Mills, Pennsylvania.

Gregory Stenstrom, Pro Se

1541 Farmers Lane
Glen Mills, PA 19342
856-264-5495
gregorystenstrom@gmail.com